STATE OF IOWA, Plaintiff, v. CENTRAL STATES ELECTRIC COMPANY, Appellee; TOWN OF JEWELL JUNCTION, Intervener, Appellant.

No. 47020.

802

July 29, 1947.

Gerald O. Blake, of Jewell, for appellant.

Barnes, Chamberlain, Hanzlik & Wadsworth and C. E. Richman, all of Cedar Rapids, and Maher & Mullen, of Fort Dodge, for appellee.

Lloyd Karr, County Attorney, for plaintiff.

BLISS, J.—This action was commenced by the filing of a petition on July 26, 1945, by the acting county attorney of Hamilton County, Iowa, naming the State of Iowa as plaintiff, and against the Central States Electric Company as defendant. The petition did not purport to be filed on the relation of the county attorney or the acting county attorney, or of anyone else, nor at the request of any court, or officer, or private citizen of the state. But from a resolution of the council of intervener, adopted July 17, 1945, it appears that the county attorney was requested to institute the suit in the name of the State of Iowa to secure a final determination of the validity and legality of Ordinance No. 64 of intervener and of the franchise granted thereby to the defendant.

The petition alleged that intervener was an incorporated town, and defendant owned and operated therein an electric light and power distribution system, under an alleged franchise, granted by the town council on March 16, 1939, known as Ordinance No. 64, which, for various reasons alleged, was not legally passed or adopted, and was null and void and granted no rights to the defendant. These reasons will be noted in discussing intervener's propositions relied upon for reversal.

The prayer of the petition, in substance, was for judgment declaring that the defendant had no right or franchise to operate its said plant, and that said ordinance was "void, illegal and of no effect." There was also a prayer for such other and further relief "as may be deemed just and equitable in the premises."

On August 17, 1945, defendant filed a motion to dismiss the petition of plaintiff, for reasons stated, in substance, as follows: 1. The facts alleged do not entitle plaintiff to the relief demanded. 2. The cause is commenced by the State, alone, and not by any relator, or by leave of court granted to any citizen. 3. The petition on its face shows that the franchise was granted to defendant, and by reason thereof it is lawfully exercising it. 4. The cause is barred by the statute of limitations. 5. More than six years had passed since the granting of the franchise, and plaintiff's action is barred by laches. 6. Defendant has constructed, maintained, and operated its plant in reliance on the franchise, and plaintiff is estopped by its conduct. 7. Plaintiff's action is a collateral attack on the franchise, and there is no allegation that the Town of Jewell Junction had no power to grant the franchise. 8. Any alleged irregularities in the adoption of the ordinance do not invalidate the franchise, since the ordinance was approved by a vote of the electors; the mayor and one councilman were not disqualified and had they been, they were, nevertheless, de facto officers.

Other divisions of the motion were to strike and to make more specific.

On October 11, 1945, defendant amended its motion to dismiss, and stated as its reasons that: Plaintiff's counsel, in open court, having asserted that plaintiff was seeking a declaratory judgment in this case, whereas it appeared from the allegations of the petition that it was an action in quo warranto, defendant added the following grounds to its motion to dismiss, to wit: (1) the allegations of the petition conclusively show there is no justiciable controversy entitling plaintiff to seek a declaratory judgment (2) plaintiff is not a party to the franchise agreement between the Town of Jewell Junction and the defendant, and has no such interest in the cause as would entitle it to maintain the action or to obtain the relief prayed for.

Thereafter, and on October 25, 1945, the Town of Jewell Junction filed its petition of intervention, alleging, in substance, that it claimed the right to intervene in said cause, and it joined plaintiff in seeking the relief demanded by plaintiff in its peti-

tion, and asserted the same rights as were asserted by the plaintiff; that it was a duly organized municipal corporation, a user of electric energy, and was the entity from which the defendant claimed to have secured its franchise. It further alleged that it made every allegation of plaintiff's petition a part of its petition of intervention as if fully rewritten therein, and:

" * * * that a real and substantial controversy is involved herein, that the interests of this intervenor and the defendant are adverse, and that this action is justiciable in character and that a judgment determining the validity of the alleged franchise claimed by this defendant will determine the future of all parties.

"That the determination of the questions raised in this cause are of great public concern and the final determination of the questions herein involved will be a guide to public officers of the intervenor in the future, and that it now becomes necessary for this intervenor to ascertain whether this defendant is lawfully using the streets of Jewell Junction, Iowa under a lawful and legal grant of franchise or whether this defendant is usurping the rights of a franchise and using said streets and other public places without lawful authority to do so.

"Wherefore intervenor prays relief for itself as prayed in plaintiff's petition and particularly does it pray that the validity of the alleged franchise of defendant be fully and finally determined and that the rights and interests of this intervenor be fully protected and for such other and further relief as may be deemed just and equitable in the premises."

On October 31, 1945, defendant filed its motion to dismiss the petition of intervention, alleging therein, in substance, many of the grounds of the motion to dismiss plaintiff's petition, and alleging further, that from the granting of the franchise:

" * * * it has continued to serve the citizens * * * giving them satisfactory service at rates that are not questioned in this proceeding; * * * and there is no claim made in the petition that this defendant has violated any of the provisions of the franchise; that for the reasons aforesaid the Town of Jewell

Junction is estopped from pleading its own irregularities as an excuse for questioning the rights of this defendant to carry on its business according to the terms of said franchise * * * [and] is estopped from claiming that its own irregularities vitiated the terms of the franchise, and that it therefore can [not] create an artificial justiciable controversy by reason of its own irregularities when no complaint has been made by the defendant thereof and the franchise has in no way been violated by the defendant; that if any justiciable controversy exists, it is one manufactured by the intervenor.''

On November 13, 1945, and after plaintiff had elected as a matter of record to assert that its action was one for a declaratory judgment, the district court of Hamilton county, speaking through Judge Clock, ruled upon defendant's motion to dismiss plaintiff's petition. In sustaining the motion and holding that the county attorney had no right or authority to initiate an action for a declaratory judgment on behalf of the State, the court, in its ruling, said:

''This weakness of plaintiff's petition is tacitly recognized by the petition of intervention filed by the Town of Jewell [Junction]. The question then arises as to whether or not the weakness has been obviated by the petition of intervention. It seems clear to the Court that the action has not been properly initiated by anyone authorized to bring the State into the litigation and therefore the petition of intervention could not arise to any higher dignity than the original action. Therefore solely upon this naked ground as set forth the motion to dismiss is sustained and the ruling is to be construed as without prejudice to the right of the Town of Jewell to initiate an independent action, as no ruling is made with reference to the substance of its contentions in the petition of intervention.''

On November 30, 1945, the plaintiff, State of Iowa, by the county attorney of Hamilton county, perfected its appeal to the supreme court of Iowa from the district court's ruling of November 13, 1945. The intervener did not appeal from that ruling.

On December 12, 1945, the district court, through Judge Clock, filed this "Explanation of Ruling," to wit:

"It appearing that there is some confusion as to whether or not the Court has ruled upon the Motion to Dismiss the petition of intervention filed by the town of Jewell, this explanation is filed." (The court then stated that it had no knowledge that such a motion had been filed when the ruling was made, and had no thought that such a motion was submitted.) The court then continued: "The motion attacking the petition of intervention stands undisposed of so far as the court is concerned."

On December 19, 1945, the district court, through Judge John M. Schaupp, passed upon defendant's motion to dismiss the petition of intervention. The court overruled the motion and held that the questions presented by, the petition of intervention were properly determinable under Rules 261–269, Rules of Civil Procedure, relating to declaratory judgments.

Defendant filed answer, in four divisions, to the petition of intervention. It admitted the corporate capacity of intervener and its ownership and operation of the electric light and power plant in Jewell Junction under the franchise granted by Ordinance No. 64. It realleged all grounds and defensive matters of its motions to dismiss. It specifically denied all other affirmative allegations of the petition of intervention. It also alleged that petition of intervention had in fact been dismissed by the ruling of the district court of November 13, 1945. In all divisions of the answer the prayer was for the dismissal of the petition of intervention, except in division one, where abatement was prayed of the petition of intervention pending the determination of plaintiff's appeal taken from the ruling of November 13, 1945. All affirmative allegations of the answer were denied in intervener's. reply.

Intervener introduced the testimony of its clerk and certain of its records. Defendant offered no testimonial evidence, but introduced certain records of intervener and documentary exhibits pertaining to adoption, publication, recording, etc., of Ordinance No. 64, and to the approval of the ordinance and franchise by the special election.

On November 13, 1946, the district court, by Judge Clock, filed judgment and decree, stating therein:

" * * * the Court having been fully advised in the premises, now FINDS that the proceedings of the special election of April 20th 1939 and the franchise ordinance No. 64 adopted pursuant thereto, and the franchise granted to the defendant thereunder and thereby, were regular and valid, and the defendant's exercise of rights under such franchise is valid and further FINDS that the petition of intervention of Town of Jewell Junction, Iowa, intervenor herein, should be dismissed at intervenor's costs.

"Be It Therefore Now Ordered, Adjudged And Decreed That the petition of intervention of the Town of Jewell Junction * * * shall be, and the same is hereby dismissed * * *."

Intervener submits three propositions upon which it relies for reversal. The first is:

"That Ordinance No. 64 * * * was never legally passed or adopted under the mandatory requirements of Chapter 290 Code of Iowa 1939 [chapter 366, Code, 1946]."

Second: "That the alleged special election of April 20th 1939, if so held, was never legally held or completed as the statutes of Iowa require, and that the records and minute book of the Town Clerk of the Town of Jewell Junction, Iowa fail to show that any election was ever held; what the results were, if an election was held; whether any canvass public or otherwise was ever made of the votes cast; whether the ballots were preserved; what became of the poll books and other acts mandatory to the holding of a special election, all in violation of Sections 841, 848, 851, 856 and 861, Code of Iowa 1939 [sections 50.2, 50.9, 50.12, 50.17, 50.22, Code of Iowa, 1946]."

Third: "That in September 1938, Mayor Williams and Councilman Anderson were elected by the Town Council of Jewell Junction, Iowa to be trustees of the Jane R. King Charity Fund, there being two vacancies then existing, and that the said Williams and Anderson did at that time in 1938 accept and qualify for said positions of trust and that by so doing they

ipso facto vacated their offices as Mayor and Councilman respectively and that in March 1939 and at the time of the proceedings relative to said franchise ordinance, they were not officers of the Town of Jewell Junction, Iowa and that any acts upon their part were null and void and of no effect."

The facts bearing upon these propositions as they fairly appear from the record show that defendant had been operating its electric plant in Jewell Junction since 1925, apparently under a franchise. On February 23, 1939, representatives of the defendant appeared at a council meeting of intervener and announced a reduction of one-half cent in power rates, and contemplated improvements in buildings and transmission lines, and refinancing at lower interest rates, which would tend to further reduce rates. A twenty-year franchise was suggested, to be effective within a year from approval by the voters, with a specified maximum K.W.H. top rate. It was suggested by the council that a citizens' petition therefor be presented. Five of such petitions, with names and addresses of signers and dates of signing, were introduced as exhibits. The petitions were addressed to the mayor and asked for the calling of a special election for the purpose of submitting to the legal electors of the town for their approval or rejection of the proposed ordinance, a copy of which was attached to the petitions. Attached to the petitions was a certificate of E. W. Knudson, town clerk, dated March 17, 1939, stating that they were filed with the mayor on March 16, 1939, and by order of the council the petitions were to be placed in the town's safe-deposit box.

The minutes of the town council on March 16, 1939, at which the mayor and all councilmen were present, recite the presentation of the petitions, the determination of their sufficiency, and the grant of their request by an order calling the special election for April 20, 1939, with notice thereof to be published in the local paper in the issues of March 23d and 30th and April 6th and 13th, with all expense of said election charged to the defendant.

The ordinance (No. 64) is properly titled as required by section 366.2, Code, 1946 (section 5715, Code, 1939). It granted to defendant authority, for twenty years after its acceptance,

to construct, maintain, and operate its electricity generating plant in the town, and its transmission lines on its streets, to furnish and sell electrical energy not in excess of a specified maximum residence and commercial rate. It provided that it was to be in full force and effect from and after its approval by the electors at the special election, its publication as provided by law, and its acceptance in writing by the defendant within sixty days after the approval of the voters at the election.

The minutes of the said council meeting of March 16, 1939, state that Councilman Anderson introduced the ordinance, which was then read to and duly considered by the council. Its adoption was moved by Councilman Anderson and seconded by Councilman Queensland. The minutes then state:

''On call of roll, Councilmen Anderson, Guhl, Queensland and Williams voted 'Aye.' 'Nays' Loder. * * * Whereupon the mayor declared the motion carried. Councilman Anderson then moved that the rule requiring *three readings* of Ordinance be suspended and this Ordinance be adopted. Same was seconded by Councilman Williams. On call of roll, Councilmen Anderson, Guhl, Queensland and Williams voted 'Aye.' 'Nays' Loder. * * * The Mayor then declared this Ordinance duly passed and adopted on this 16th day of March 1939 all subject to provisions of Section 2.*

Merlin E. Williams, Mayor of the Town.
Attest E. W. Knudson, Clerk of the Town.''(Italics supplied.)
* Section 2 provides that the ordinance shall be in effect after its approval by the electors at the special election.

The minutes of the same meeting show that by motions duly carried two councilmen were selected as clerks, and three as judges of the special franchise election, and the clerk was directed to procure necessary election supplies and the town marshal to arrange for the booths and polling places.

E. W. Knudson, the town clerk, became ill in 1941 and died in the fall of that year. Magnus Johnson became clerk of the town in July 1941. As custodian of the official records, books, and papers of the town he produced in court many of these at

defendant's request. They were received as exhibits. Among them were the petitions for the special franchise election; letter of the clerk of April 5, 1939, to Matt Parrott & Sons Company of Waterloo, stating the holding of the special election on April 20, 1939, and requesting the sending of a specified list of election supplies; a letter of the clerk dated April 19, 1939, to the judges and clerks of election, accompanying election supplies, among which were seven hundred ballots, ten sample ballots, seventeen absent-voters' ballots, complete with envelopes, twelve instruction cards, four affidavits of voter unable to mark ballot, one set of miscellaneous supplies (wire and needles for stringing ballots, sealing wax, pencils, blotters, two bottles of ink, pens, and penholders); four warning cards; two pollbooks (six hundred forty names) complete with envelopes for return of pollbooks, ballots voted, disputed ballots, spoiled, and unused ballots; one muslin sack containing supplies; one muslin sack for all ballots voted and counted; letter of the clerk of April 6, 1939, mailed to W. F. Templer and Ed Pinckney, appointing them special police at the polling place (required by section 49.114, Code, 1946, section 831, Code, 1939); written oath of special police administered by mayor; their appointment by the council; copy of official ballot, fully complying with sections 49.44–49.47, Code, 1946 (sections 762–765, Code, 1939); ballot recites, "Special Municipal Election, Town Hall, Jewell Junction, Iowa, April 20th, 1939, 8 A.M. to 8 P.M." The proposition, stated in capital letters, was: "Shall the following public measure (An ordinance granting a franchise to the Central States Electric Company of Cedar Rapids, Iowa, its successors or assigns) be adopted?"; notice of the special election, with copy of ordinance; order of mayor, attested by clerk, dated March 16, 1939, for its publication; sworn proof of publication for four consecutive weeks (March 23–April 13, 1939) by publisher of Jewell Record; certificate of election, filed by clerk April 21, 1939, at 9 a.m., signed by the two clerks and three judges of election, stating that "At an election holden in Town of Jewell Junction * * * on the 20th day of April A.D. 1939, the public measure (an ordinance granting a franchise to Central States Electric Company of Cedar Rapids, Iowa [its successors or assigns]) was

adopted by a majority of the legal electors of the Town of Jewell Junction * * * for the term of 20 years from the 20th day of April 1939, subject to its acceptance * * *''; notice to defendant: ''Notice To Company Asking Franchise From Town * * * To Central States Electric Company of Cedar Rapids, Iowa—greeting. You are hereby notified * * *'' (Then follows a substantial copy of the foregoing certificate of election reciting the adoption of the ordinance by the voters.) ''You are therefore, required to accomplish proper acceptance and comply with the stipulations. of the ordinance, according to law. Dated this 24th day of April 1939, E. W. Knudson. Clerk [of Town].'' On the reverse side of this notice is this: ''Notice of Service and Filing. Original copy forwarded by registered mail to Central States Electric Company of Cedar Rapids, Iowa, this 24th day of April 1939, and copy filed in the office of Clerk of the Town of Jewell Junction, Iowa this 24th day of April 1939 at 11 A.M.'' Signed by clerk.

Exhibit E is defendant's return receipt, dated April 25, 1939, for the registered letter just referred to. Defendant's Exhibit AA is:

''Acceptance. Central States Electric Company, Cedar Rapids, Iowa does hereby accept the terms and provisions of Ordinance No. 64 passed and adopted by the Town Council of the Town of Jewell Junction, Iowa on the 16th day of March 1939 and approved by the legal electors of said Town at a special election held on the 20th day of April 1939, said Ordinance being: [The ordinance is here described by its title].''

The acceptance is dated April 24, 1939, and signed by defendant by its vice-president, F. A. Thatcher.

Exhibit F is a carbon copy of letter, dated April 24, 1939, from Town Clerk Knudson to Central States Electric Company, enclosing notification of the election approving the ordinance and granting franchise to defendant, and further stating:

''Your attention is called to the fact that the said ordinance was published in the Jewell Record in its issue of April 13 1939, and is to be again so published in its issue of April 27th 1939. A statement of the costs of the special election will

be forwarded to you at an early date for payment by you to the town as required by law.''

Exhibit V is defendant's voucher stub showing payment of the election expense in the sum of $133.15, and Exhibit W is the letter of defendant to intervener's mayor, dated July 15, 1939, enclosing check for $133.15, as per statement in intervener's letter of July 1, 1939.

Exhibit G is proof of publication dated May 2, 1939, of Ordinance No. 64 by the publisher of the Jewell Record in its issues of April 13th and 27th, 1939. Because of minor typographical errors in the above-noted publications, Ordinance No. 64 was ordered by the town clerk to be republished, as corrected, in the issue of the Jewell Record of May 4, 1939. Defendant's Exhibit AF is that paper's issue of May 4, 1939, carrying the ordinance in full.

Defendant's Exhibit AH is a muslin sack upon which is printed and written the following:

''This Bag Contains Ballots Voted And Counted
    Special Municipal
  No. Of Ballots Voted 454
At An Election Held At Jewell Junction in * * *
County of Hamilton, State of Iowa on the 20th day of April 1939.
    To Be Returned To Clerk .
    Jewell Junction, Iowa''

Defendant's Exhibit AJ is a muslin bag upon which is written and printed the following:

''This Bag Contains Entire Election Supplies To be used at an election to be held on the 20th day of April 1939 Return misc and unused and undelivered.''

Defendant's Exhibit AI is a newspaper clipping as follows:

''Central States Co. Is Given Franchise

''As was anticipated the franchise election held in Jewell Thursday of last week brought out a splendidly big vote; a total of 463 votes being polled. By a narrow margin Central

States Electric Co. was voted a twenty-year franchise subject to the provisions of the ordinance voted, upon and subject of course to control by the council that Iowa laws provide. The vote was 236 in favor of the franchise ordinance and 218 against it; a majority of 18 votes. There were 9 spoiled ballots cast.''

Magnus. Johnson, the town clerk, who succeeded Knudson, was a witness for the intervener. When asked, on cross-examination, if he remembered reading the news item above in the issue of the Jewell Record of April 27, 1939, he testified:

''I don't remember whether I did. I suppose I did, it is so far back.''

He testified that he. voted at the special election of April 20, 1939, and recalled that the vote was close, and that the majority voted in favor of granting the franchise. He also testified that the two sacks, Exhibits AH and AJ, were tied just as he had found them when he became clerk. He did not know their contents as he had never untied the sacks. They were not untied at the trial. He testified that he had never seen the pollbook of the special election and knew nothing about it. It was stipulated that the county auditor—who was not the auditor in 1939—would, if present, testify that he had never seen such a pollbook in his office.

I. In proposition one the intervener contends that the minutes of the meeting of March 16, 1939, show that there was no compliance with section 5716, Code, 1939 (section 366.3, Code, 1946). The sections are identical and read as follows:

''366.3 Reading. Ordinances of a general or permanent nature and those for the appropriation of money shall be fully and distinctly read on three different days, unless three-fourths of the council shall dispense with the rule.''

It will be noted that the heading of the section is the word ''Reading,'' and also that the body of the section requires the ordinances to be ''read'' on ''three different days,'' unless the ''rule'' is dispensed with by three fourths of the council. There were but five councilmen in the council, and as four voted

to dispense with the rule more than three fourths of the council so voted. Intervener does not contend otherwise but insists that there was a failure to comply with the section because Councilman Anderson said "three readings" instead of saying "three readings on three different days." He should have so expressed himself. But it is clearly apparent that that is what he meant, and that is what he intended to say. The matter of "reading" is the prominent thought in the section. That was the thought and the word that was foremost in his mind. As members of the council, he and his associates were familiar with the section. He never intended to dispense with three readings in one day, because three readings in one day was an unheard of practice and one not required by law. It was his thought and intention to dispense with something which the section required, reading on three different days. He inadvertently failed to say so. But his purpose and that of the other councilmen was clear. They intended to and did dispense with the statutory rule requiring a reading of the ordinance on three different days.

We will follow the equitable maxim: "Equity looks on that as done which is to be done." The council clearly intended to dispense with the "rule." Four fifths of the council so voted, and by a recorded yea-and-nay vote four fifths of the council adopted the ordinance. As said by Evans, J., in Collins v. City of Iowa Falls, 146 Iowa 305, 308, 125 N. W. 226, 227, a similar case:

"Taking the whole record, however * * * we think it would be unduly technical to hold that the verbal inaccuracy noted was fatal to the ordinance."

In Rafferty v. Town Council of Clermont, 180 Iowa 1391, 1392, 164 N. W. 199, 200, the court said:

"The proceedings of town councils and the acts of town officers should be liberally construed, with a view to upholding the transaction of essential public business."

City of Bloomfield v. Blakely, 192 Iowa 310, 184 N. W. 634; State v. Livermore, 192 Iowa 626, 185 N. W. 1; Farmers Tel. Co. v. Town of Washta, 157 Iowa 447, 452, 133 N. W. 361,

and other cases cited by intervener are of no aid to it. There is no merit in intervener's first proposition.

II. Neither do any of the claimed violations of the Code sections noted in proposition two call for a reversal of the judgment and decree of the district court. The record does not establish that any of the sections were not substantially complied with. The record, which we have set out at some length, shows that the officers of intervener were extremely careful and meticulous to strictly comply with every statutory requirement respecting the special election. There is no basis for the intimation of intervener that no election may have been held. It is true that the pollbooks were not found, but that does not establish that they were not returned and delivered as required by sections 50.17 and 50.18 of the 1946 Code. Furthermore, under section 50.19 of said Code there is no requirement for their preservation beyond three years where no contest is pending. The rights of the intervener or of any of its citizens are not shown to have been violated to their injury by any failure to file or find the pollbooks. As said in Poor v. Incorporated Town of Duncombe, 231 Iowa 907, 912, 2 N. W. 2d 294, 297:

"The mere failure to file the poll book with the county auditor could not be held to vitiate the election."

All of the ballots, whether voted, spoiled, or unused, were no doubt in the sacks, Exhibits AH and AJ, unless they had been destroyed as required by statute. The record, beyond fair question, establishes that the special election was held in substantial compliance with all statutory requirements; that a majority of the ballots were cast for the approval of the ordinance; that it was accepted by the defendant, published as required by statute, and that defendant has complied with all requirements on its part.

III. Respecting intervener's third proposition the record shows that Jane R. King, of Jewell Junction, by will, provided for a fund to be known as the Jane R. King Charity Fund for the benefit of worthy poor people of Hamilton county, with preference to those of Jewell Junction and vicinity. To administer the fund the testatrix named three trustees subject to

the approval of the district court of Hamilton county. Their term of office was for life or until removed for good cause by said court. Any vacancies among the trustees were to be filled by nomination made by the town council of Jewell Junction, which nomination also required the approval and confirmation of the court. The trustees were authorized to fully administer the trust by investing and reinvesting the funds in sound interest-bearing securities; to sell and convey any part of her residuary estate, subject to the court's approval; to keep the securities in some reputable bank in the county; to select said bank, or other person, as the treasurer of the trust estate, upon giving proper bond; to have wide latitude in the charitable use of the trust estate; to select a chairman and secretary from their number, who, with the treasurer, should in January of each year make a detailed report of all investments, receipts, and expenditures, in duplicate, one copy to be given to the town council of Jewell Junction, and the other to the district court. The secretary was required to keep a full and accurate account of the principal and income, and the manner and places of investment, which account should at all times be open to inspection by said town council and court. Each trustee was to receive as compensation not to exceed $100 a year, and the treasurer not to exceed one half of one per cent of the sum total of the securities in his care and custody. All compensation to the trustees and treasurer was subject to approval and to increase by the court.

In September 1938 there were two vacancies on the board of trustees and the town council appointed, subject to the court's approval, Councilman John C. Anderson and Mayor Merlin E. Williams, officers of Jewell Junction, as trustees of said fund.

Intervener contends that acceptance of the position as trustees of the charity fund by the mayor and councilman, in itself, removed each of them from his municipal office, because of the incompatibility of the two positions. This contention is not tenable. The duties, responsibilities, and obligations of a trustee of said fund in no way conflicted or interfered with the duties, responsibilities, and obligations of either the mayor or

the councilman of Jewell Junction. The position of trustee was not incompatible with that of mayor or councilman of the town. There was nothing in the nature of the duties as trustees that made it improper or against public policy for each to also retain his municipal office. The occupancy of the position of trustee in no way prevented either from fully and fairly performing the duties of his office in the town. The duties of the position of trustee were not inherently inconsistent with or repugnant to the duties of mayor or councilman. Neither was there any physical inability in properly filling the private and public positions. See Bryan v. Cattell, 15 Iowa 538, 549–551; State ex rel. Crawford v. Anderson, 155 Iowa 271–274, 136 N. W. 128, Ann. Cas. 1915A, 523; State ex rel. Banker v. Bobst, 205 Iowa 608–611, 218 N. W. 253.

■ If it be conceded that there was an incompatibility in the two offices, it would not follow necessarily that it would invalidate the acts of the mayor and councilman with respect to the passage of Ordinance No. 64, and the special election and matters connected therewith. After their acceptance of the trusteeship, these men continued to perform their duties as mayor and councilman, respectively, throughout 1939. The Town of Jewell Junction held them out to the public as officers of the town. If they were not officers de jure they were officers de facto and the town cannot declare their acts as such of no force and effect where the rights of third persons are affected. This is a generally accepted principle of law in Iowa and elsewhere. As said in Metropolitan Nat. Bk. v. Commercial State Bk., 104 Iowa 682, 687, 74 N. W. 26, 28:

"It is the well-settled general rule that the acts of officers *de facto* are as valid and effectual, where they concern the public or the rights of third persons, as though they were officers *de jure,* and that their authority to act cannot be questioned in collateral proceedings."

See, also, Bremer County v. Schroeder, 200 Iowa 1285, 1287, 206 N. W. 303; Cowles v. Independent Sch. Dist., 204 Iowa 689, 699, 216 N. W. 83.

■ ■ ■ IV. The intervener has failed in this action

because it has failed to establish the allegations of its petition; it is, therefore, not necessary to pass upon the various defenses alleged and urged by the defendant. While not appealing, it insists, as it rightfully may, that the judgment and decree of the trial court should be affirmed because intervener is not entitled to relief by way of declaratory judgment. It contends that intervener has merely created an artificial controversy where no justiciable controversy existed before, and that it is asking only for an advisory opinion to guide it in the future. So far as appears there had been no open and overt controversy between the intervener and defendant prior to this proceeding. There had been no actual assertion and denial between them with respect to the franchise. The facts upon which the initial rights of the parties are based have never changed. The dormant seed of the controversy was there. This action arose because of the construction which intervener placed on those facts and the conclusion of law which it reached. It had a right to test and try that conclusion by court procedure. When it filed its petition in court, and defendant by pleading challenged it, a good-faith controversy—a justiciable controversy—arose. Every contest in court must be a justiciable controversy, whether the action be a well-known or long-existing one, or one for a declaratory judgment. Intervener could have proceeded by quo warranto, injunction, ouster, or other suit. It elected to proceed under the Rules of Civil Procedure permitting declaratory judgments. Rule 261 provides that the existence of another remedy does not preclude declaratory relief. Rule 262 provides that a right, status, or relation under a municipal ordinance or franchise may be determined by declaratory judgment. If the matter may be determined only by a long investigation of matters of fact, the court might, in the exercise of sound judicial discretion, refuse to proceed under Rules of Civil Procedure 261–269. In this case the facts were not in material dispute and were largely documentary. The district court acted clearly within its proper discretion in entertaining the action. The procedure is remedial and should be given a reasonably liberal construction. For general discussion of the subject matter, see 16 Am. Jur.,

Declaratory Judgments, section 1 et seq.; 1 C. J. S., Actions, section 18; 68 A. L. R. 111–134; 87 A. L. R. 1206–1250.

One of the purposes of declaratory relief is to determine and adjudicate a right, status, or relation. Intervener prayed that the controversy respecting the validity of the franchise granted to the defendant by Ordinance No. 64 "be fully and finally determined." The district court by its findings of fact, conclusions of law, and its judgment and decree has done so. This court fully agrees therewith. The judgment and decree is —Affirmed.

OLIVER, C. J., and HALE, GARFIELD, SMITH, MANTZ, MULRONEY, and HAYS, JJ., concur.