**IOWA TELEPHONE ASSOCIATION, Appellant,**

v.

**CITY OF HAWARDEN, Appellee.**

No. 97–83.

Supreme Court of Iowa.

Feb. 17, 1999.

Robert F. Holz, Jr. and Steven L. Nelson of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for appellant.

Ivan T. Webber, Paul D. Burns and Elizabeth A. Grob of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for appellee.

William F. Sueppel of Meardon, Sueppel, Downer & Hayes, P.L.C., Iowa City, and Dennis Dietz, Iowa League of Cities, Des Moines, for amicus curiae Iowa League of Cities.

Gordon Greta, Ankeny, for amicus curiae Iowa Association of Municipal Utilities.

Philip E. Stoffregen of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for amicus curiae MCI WorldCom, Inc.

James L. Abshier, Sioux City, for amicus curiae City of Sioux City.

Fred L. Dorr of Wasker, Dorr, Wimmer & Marcouiller, P.C., Des Moines, for amicus curiae North West Rural Electric Cooperative.

Mark C. Thomas, Coon Rapids, for amici curiae Cities of Coon Rapids, Iowa, and Laurens, Iowa.

Scott G. Buchanan of Buchanan, Bibler, Buchanan, Handsaker & Gabor, Algona, for amicus curiae Algona Municipal Utilities.

John C. Larsen of Redfern, Mason, Dieter, Larsen & Moore, P.L.C., Cedar Falls, for amicus curiae Municipal Communications Utility of the City of Cedar Falls.

David J. Lynch of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for amici curiae Cities of Sanborn, Hartley, Paullina, and Primghar, and the Community Cable Television Agency of O'Brien County.

David J. Lynch of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, and James Baller, Sean A. Stokes, and Lana Meller of The Baller Law Group, P.C., Washington, D.C., for amicus curiae American Public Power Association.

TERNUS, Justice.

Appellee, the City of Hawarden, intends to provide land-line local telephone service to customers located within and outside of its municipal corporate limits. Appellant, Iowa Telephone Association (ITA), sought a declaratory ruling that the City was prohibited by statute from providing such service. *See* Iowa Code §§ 23A.2 (prohibiting government competition with private enterprise with certain exceptions), 384.81 (requiring cities that operate a city utility to do so in accordance with the provisions of the city code of Iowa) (1995). The City's motion to dismiss ITA's petition on the basis ITA's sole remedy was quo warranto was denied. On the parties' cross-motions for summary judgment, the district court held that any state law inhibiting the City's ability to offer telephone service was preempted by the Telecommunications Act of 1996. *See* Telecommunications Act of 1996 § 101(a), 47 U.S.C. § 253 (1996). Accordingly, the court denied ITA's motion for summary judgment, granted the City's motion for summary judgment, and dismissed the case. ITA appealed and the City cross-appealed.

On October 21, 1998, this court filed an opinion affirming the district court's ruling on the City's motion to dismiss, but reversing the court's rulings on the parties' motions for summary judgment. In response to a petition for rehearing filed by the City, that opinion, which was not published, was withdrawn. We concluded that we had overlooked an argument made by the City in the district court, namely, that 47 U.S.C. § 541(b)(3)(B) prevented the State from prohibiting a cable television operator, such as the City's utility, from also operating a telephone system. In rehearing the issues on this appeal, we now conclude that the district court's summary judgment ruling should be affirmed on the basis of § 541(b)(3)(B) preemption. Consequently, we affirm the district court's rulings on the parties' motions for summary judgment, as well as the district court's denial of the City's motion to dismiss.

I. *Background Facts and Proceedings.*

On October 18, 1994, voters in the City of Hawarden approved a measure allowing the City to establish a municipal cable communications system as a city utility. Thereafter, the city council adopted an ordinance to establish such a utility, identifying as two of several goals the provision of cable television service and telephone service. In March 1996, the City filed an application with the Iowa Utilities Board seeking a certificate of convenience and necessity for its telephone system or a declaratory ruling that a certificate was not needed. The Board ruled it had no jurisdiction to consider the City's application because the regulation of municipally-owned utilities providing telephone service was not within its statutory power.

ITA is an incorporated association whose members are companies that provide land-line local telephone service to customers in the State of Iowa, including the City of Hawarden. In April 1996, ITA filed this action challenging the City utility's power to operate a telephone system. ITA sought a declaratory judgment that Iowa Code section 23A.2 prohibits a municipal utility from competing with private industry in the offering of telephone services. In a later amendment, ITA alleged that Iowa Code section 384.81 prohibits a municipality from operating any city utility other than as defined in Iowa Code section 362.2(6), and that this latter statute does not include a telephone system

within the definition of a city utility. The City initially filed a motion to dismiss in which it claimed ITA's exclusive remedy was quo warranto. This motion was denied by the district court.

Both parties then filed motions for summary judgment. ITA asked the court to rule that the City was prohibited by state ·law from providing telephone service. The City asked the court to dismiss ITA's petition for four reasons: (1) federal law preempts any state law that would prohibit a municipality from operating· a telephone system; (2) the definition of "city utility" contained in section 362.2(6) includes telephone systems; (3) section 23A.2(1)(a) does not prohibit city utilities from providing telephone service; and (4) ITA's exclusive remedy was quo warranto. As noted above, the district court denied ITA's motion for summary judgment and granted the City's motion, concluding that state law, to the extent it would prohibit the City from operating a telephone system, was preempted by 47 U.S.C. § 253, the general preemption provision of the Telecommunications Act of 1996. ITA appealed the court's summary judgment ruling and the City filed a cross-appeal, challenging the district court's denial of its motion to dismiss.

On appeal, ITA argues (1) the district court erred in granting the City's motion for summary judgment because federal law does not preempt state law, and (2) the district court erred in denying ITA's summary judgment motion because section 23A.2(1)(a) prohibits the City from providing telephone service, and section 384.81 restricts a city utility to those functions listed in section 362.2(6), functions that do not include the provision of telephone service. The City takes a contrary position and, in addition, contends that the district court should have dismissed ITA's declaratory judgment action because ITA's exclusive remedy is quo warranto.

In addition to these issues, the City has raised a mootness claim in a motion to dismiss the appeal filed with this court. The City claims that the present controversy is moot because, it argues, a recently-enacted state law authorizes municipally-owned utilities to provide· "local exchange services," namely, local telephone service. *See* 1997

Iowa Acts ch. 81 (codified at Iowa Code §§ 476.1B(1), .1B(3), .29(16), .96(3) (Supp. 1997)).

II. *Is this Appeal Moot Because State Law Now Expressly Authorizes Municipalities to Provide Telephone Service?*

■ Before we discuss the issues raised on the appeal and cross-appeal, we address the City's motion to dismiss the appeal on grounds of mootness. We have recently set forth the applicable principles governing our consideration of a mootness claim:

"In general, an action is moot if it no longer presents a justiciable controversy because the issues involved have become academic or nonexistent." "[O]ur test of mootness is whether an opinion would be of force or effect in the underlying controversy." In other words, will our decision in this case "have any practical legal effect upon an existing controversy"?

*Iowa Mut. Ins. Co. v. McCarthy,* 572 N.W.2d 537, 540 (Iowa 1997) (citations omitted). If the City is correct that state law now expressly authorizes municipalities to offer telephone service, then the issues litigated below become academic. Therefore, we must decide whether the new law cited by the City permits it to provide telephone service.

House File 596, signed into law in April 1997, amended several sections of Iowa Code chapter 476–Public Utility Regulation. *See* 1997 Iowa Acts ch. 81. The title of the act summarizes its provisions: "AN ACT authorizing the utilities board to issue certificates of public convenience and necessity to municipal telecommunications utilities, regulating certain municipal utilities as competitive local exchange service providers, and including effective date and retroactive applicability provisions." *Id.* There is no mention that the act authorizes city utilities to provide telephone services. *See Holiday Inns Franchising, Inc. v. Branstad,* 537 N.W.2d 724, 728 (Iowa 1995) (stating court may consider act's preamble in ascertaining legislative intent).

The substantive provisions of the act amended chapter 476 to provide that "a municipally owned utility providing local ex-

change services is not subject to regulation by the [utilities] board ... except for regulatory action pertaining to enforcement" of several specified Code sections. 1997 Iowa Acts ch. 81, § 2 (codified at Iowa Code § 476.1B(3) (Supp.1997)). Chapter 476's definition of "competitive local exchange service provider" was also amended to include "a municipal utility." Id. § 4 (codified at Iowa Code § 476.96(3) (Supp.1997)). The act further provided that any application for a certificate of public convenience and necessity filed prior to the effective date of the act "shall be deemed refiled as of the effective date of the Act for purposes of issuance of the certificate in accordance with this Act." Id. § 5. The act took effect upon enactment and was made retroactively applicable to October 18, 1994, the very day the citizens of Hawarden approved the formation of a municipal cable communications utility. See id. § 6.

The City argues that this act, which authorizes the Iowa Utilities Board to issue certificates of convenience to municipal utilities providing local exchange services, has the effect of authorizing cities to operate telephone systems as part of a municipal utility. ITA contends the City reads too much into the act. It points out that the act did not amend those chapters of the Iowa Code dealing with the powers of cities, known as the "City Code of Iowa." See Iowa Code § 362.1 (stating that chapters 362, 364, 368, 372, 376, 380, 384, 388 and 392 "may be cited as the 'City Code of Iowa' "). ITA asserts the only legislative intent shown by the act is "that there not be any unregulated telephone utilities in the State of Iowa."

We find ITA's argument more persuasive. At most, House File 596 presumes the existence of municipal utilities that intend to provide local telephone service. Clearly, the act does not expressly authorize the creation of such utilities. If the legislature's intent had been to authorize municipal utilities to provide telephone service, it more logically would include such a provision in those chapters of the code dealing with city powers and city utilities. Because the legislature instead amended the Code chapter governing the jurisdiction of the Iowa Utilities Board, we think the legislature merely intended to expand or clarify the Board's power so there would be no unregulated city utilities offering telephone service. Consequently, we conclude House File 596 did not make the issue before us—whether state law can or does prohibit a city from offering local telephone service—academic. Therefore, the present appeal is not moot.

### III. Scope of Review.

■ The district court's ruling on the City's motion to dismiss is challenged, as well as the court's ruling on the parties' cross-motions for summary judgment. We review the district court's decision on a motion to dismiss for correction of errors of law. See Burnham v. City of West Des Moines, 568 N.W.2d 808, 809 (Iowa 1997); In re Estate of Voss, 553 N.W.2d 878, 880 (Iowa 1996). The court's decision must rest on legal grounds. See Voss, 553 N.W.2d at 880.

■ Our review of a summary judgment ruling is also for correction of errors of law. See Goodell v. Humboldt County, 575 N.W.2d 486, 491 (Iowa 1998). Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Iowa R. Civ. P. 237(c). In this case, the facts are not disputed; the controversy centers on the correct interpretation of the relevant statutes. Under these circumstances, "[o]ur role is simply to decide whether we agree with the district court's application of the law to the undisputed facts before us." Goodell, 575 N.W.2d at 491.

### IV. Was ITA's Exclusive Remedy Quo Warranto?

■ Before we consider the correctness of the district court's summary judgment ruling, we must first decide whether the court properly reached the merits of this case. The City argues the trial court should have granted its motion to dismiss on the basis that ITA's exclusive remedy was quo warranto.

■ Quo warranto is a means of testing "the authority of a municipality to act, but not the manner of exercising its authority."

17 Eugene McQuillin, *The Law of Municipal Corporations* § 50.06, at 559 (3d ed. rev.vol. 1993). The City relies on the general rule that where quo warranto is available, it is the exclusive remedy for testing the legality of a municipal body's organization. *See Swan Lake Consol. Sch. Dist. v. Consolidated Sch. Dist.,* 244 Iowa 1269, 1277, 58 N.W.2d 349, 353 (1953); *Cook v. Consolidated Sch. Dist.,* 240 Iowa 744, 751, 38 N.W.2d 265, 268 (1949); 65 Am.Jur.2d *Quo Warranto* § 7, at 235 (1972). ITA claims quo warranto does not apply here because it is challenging a municipal *action,* not a municipal *organization. See Anderson v. Hadley,* 245 Iowa 550, 559–60, 63 N.W.2d 234, 240 (1954) (holding quo warranto is not an exclusive remedy when merely seeking review of "two acts of illegality" by the school district, rather than "the legality of organization" of the district). Additionally, ITA relies on Iowa Rule of Civil Procedure 261, which states that "[t]he existence of another remedy does not preclude a judgment for declaratory relief in cases where it is appropriate."

■ We need not decide the nature of ITA's challenge because even if quo warranto is available to ITA, that remedy is not exclusive. This conclusion is based on our view that rule 261 changed the common-law exclusivity rule as it applied to declaratory relief. Thus, declaratory relief is appropriate, even if the remedy of quo warranto is also available. *See State v. Central States Elec. Co.,* 238 Iowa 801, 819, 28 N.W.2d 457, 466 (1947) (holding declaratory relief was proper even though the intervenor could have proceeded by quo warranto). Accordingly, the district court correctly denied the City's motion to dismiss.

V. *Does Federal Law Preempt State Laws Prohibiting Municipal Telephone Utilities?*

■ We next address the issue found dispositive by the district court—federal preemption. In the district court, the City relied on two provisions of the Telecommunications Act of 1996 to support its position that the State could not prohibit the City's utility from offering telephone service. One provision, and the one upon which the district court relied, is found at 47 U.S.C. § 253(a). The second provision is found at 47 U.S.C. § 541(b)(3)(B).

■ In determining whether a federal law preempts state action, our role is to ascertain congressional intent. *See City of Des Moines v. Master Builders of Iowa,* 498 N.W.2d 702, 705 (Iowa 1993) (citing *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 137–38, 111 S.Ct. 478, 482, 112 L.Ed.2d 474, 483 (1990)). If the federal statute pertains to an activity traditionally regulated by the states, the statute will be construed to protect state authority unless "the clear and manifest purpose of Congress" is to preempt. *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 663–64, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387, 396 (1993); accord *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407, 422 (1992). Although "Congress may legislate in areas traditionally regulated by the States, ... 'it must make its intention to do so unmistakably clear in the language of the statute.'" *Gregory v. Ashcroft,* 501 U.S. 452, 460, 111 S.Ct. 2395, 2400–01, 115 L.Ed.2d 410, 423–24 (1991) (quoting *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171, 179 (1985)). In *Gregory,* the Supreme Court adopted the plain-statement rule: the courts will not interpret a federal statute in such a way as to intrude upon an area traditionally regulated by the states absent a clear expression of congressional intent to do so. *See id.,* We are also mindful of federal principles of statutory construction requiring that we give "considerable weight ... to an executive department's construction of a statutory scheme it is entrusted to administer." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694, 704 (1984).

We turn now to the preemption provision that was the basis of the district court's summary judgment ruling—47 U.S.C. § 253(a).

A. *Applicability of 47 U.S.C. § 253(a).* The Telecommunications Act of 1996 reads in pertinent part:

(a) In general

No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of *any entity* to provide any interstate or intrastate telecommunications service.

. . . .

(d) Preemption

If ... the [Federal Communications] Commission determines that a State or local government has permitted or imposed any statute, regulation, or legal requirement that violates subsection (a) or (b) of this section, the Commission shall preempt the enforcement of such statute, regulation, or legal requirement to the extent necessary to correct such violation or inconsistency.

Telecommunications Act of 1996 § 101(a), 47 U.S.C. § 253 (emphasis added). The City thinks the statute's "any entity" language embraces its utility, and thus, to the extent any Iowa law prohibits a municipal utility from offering telecommunications services, that law is preempted.

Although the Telecommunications Act of 1996 is a relatively new statute, we are guided by a recent decision of the Federal Communications Commission (FCC), the executive agency to whom Congress delegated the responsibility of administering the preemption provisions of the act. *See In re Pub. Utility Comm'n of Texas,* 13 F.C.C.R. 3460 (1997), *aff'd sub nom., City of Abilene v. Federal Communications Comm'n,* 164 F.3d 49, 53 (D.C.Cir.1999) (hereinafter *"Texas* decision").[1] In the FCC's *Texas* decision, the FCC considered a challenge to a Texas statute that included a provision prohibiting municipalities from providing local telephone service. The parties arguing for preemption claimed the phrase "any entity" was unambiguous and did not exclude municipalities. *Id.* at 3542, ¶ 175. These parties also noted that Texas is a home rule state and although " 'home rule' cities are subject to state law, they derive their authority directly from the Texas Constitution and thus have status as an entity separate and apart from the State of Texas." *Id.* at 3542–43, ¶ 176.

The FCC rejected these arguments for several reasons: (1) cities are not entities separate and distinct from the state for the purpose of § 253(a) preemption; (2) to find preemption would insert the FCC into the relationship between states and their political subdivisions in a way not intended by Congress; (3) even "home rule" cities are subject to the superior authority of the state legislature; and (4) because the authority permitted by a state to its political subdivisions has traditionally been within the purview of the states, the FCC should not find congressional intent to interfere absent a clear indication of such intent. *Id.* at 3544–46, ¶¶ 179–181. Based on these conclusions, the FCC held that a municipality was not an "entity" within the meaning of § 253(a) and consequently, the Texas law prohibiting municipalities from operating telephone systems was not preempted. *Id.* at 3467, ¶ 16. The United States Court of Appeals for the District of Columbia agreed, concluding that Congress's intent "to include municipalities in the category 'any entity' " was not plain as required under *Gregory. City of Abilene,* 164 F.3d at 54.

We agree with this interpretation of § 253(a) and hold that this statute does not prevent the State of Iowa from prohibiting the offering of local telephone service by its political subdivisions. In view of this interpretation of § 253(a), we conclude the district court erred in granting summary judgment on this basis. Nevertheless, we may affirm "on any basis appearing in the record and urged by the prevailing party." *Voss,* 553 N.W.2d at 879 n. 1. Therefore, we now consider the City's alternative argument in support of its motion for summary judgment—that 47 U.S.C. § 541(b)(3)(B) preempts any law that would prohibit the City's utility from offering telephone service.

B. *Applicability of 47 U.S.C. § 541(b)(3)(B).* This statute, also part of the Telecommunications Act of 1996, provides that "[a] franchising authority may not impose any requirement under this subchapter that has the purpose or effect of prohibiting ... the provision of a telecommunications

---

1. We note the FCC's ruling was filed after the district court rendered its decision in this case.

service by a cable operator. . . ." 47 U.S.C. § 541(b)(3)(B). The City claims that the State is a franchising authority under the definition of that term found at 47 U.S.C. § 522(10). It then argues that because the City's utility is providing cable television services,[2] § 541(b)(3)(B) prevents the State from prohibiting the City's utility from also offering telephone service.

ITA responds that this argument is no different than the § 253(a) preemption argument. It contends that there is a statutory interpretation issue on whether the phrase "cable operator" includes a municipality. ITA claims that a municipality is not included for the same reasons a municipality is not an "entity" under § 253(a), including the argument that Congress did not intend to interfere in the relationship between a state and its political subdivisions. *See Gregory*, 501 U.S. at 460–61, 111 S.Ct. at 2401, 115 L.Ed.2d at 423–24 (requiring plain statement of Congress's intent to intrude upon area traditionally regulated by the states). If § 541(b)(3)(B) does reach municipal utilities, the statute, asserts ITA, violates the Tenth Amendment to the United States Constitution.

In addressing the applicability and effect of § 541(b)(3)(B), we will first ascertain the proper interpretation of this statute. We will then discuss any Tenth Amendment implications.

1. *Statutory interpretation.* Initially, we note that § 541(b)(3)(B) differs in a fundamental way from § 253(a); the relevant terms in § 541(b)(3)(B) are defined by Congress, whereas there is no statutory definition of the term "any entity" as used in § 253(a). Thus, we start with the statutory definitions.

We first consider whether the State of Iowa is a "franchising authority" within the meaning of the statute. The term "franchising authority" is defined as "any governmental entity empowered by Federal, State or local law to grant a franchise." 47 U.S.C.

§ 522(10). A "franchise" includes any "authorization . . ., whether such authorization is designated as a franchise, permit, license, resolution, contract, certificate, agreement, or otherwise, which authorizes the construction or operation of a cable system." *Id.* § 522(9). ITA does not dispute that the State of Iowa qualifies as a "franchising authority." Indeed, the State, through its statutory regulation of the services that may be offered by municipal utilities, is the entity that authorizes the operation of cable systems by such utilities. *See* Iowa Code §§ 362.2(6), 384.81(1). Because the State of Iowa is a franchising authority, § 541(b)(3)(B) prevents the State from "impos[ing] any requirement . . . that has the purpose or effect of prohibiting . . . the provision of a telecommunications service by a cable operator. . . ." 47 U.S.C. § 541(b)(3)(B).

We next consider whether the City's utility is attempting to offer "a telecommunications service." The term, "telecommunications service," means "the offering of telecommunications for a fee directly to the public. . . ." *Id.* § 153(46). The meaning of "telecommunications" is quite expansive: "the transmission, between or among points specified by the user, of information of the user's choosing, without change in the form or content of the information as sent and received." *Id.* § 153(43). ITA does not dispute that "telecommunications service" includes telephonic communications. Thus, we are left with the final question: does the City's utility qualify as a "cable operator" within the meaning of § 541(b)(3)(B)?

The phrase "cable operator" is defined as "any person . . . who provides cable service over a cable system and . . . owns a significant interest in such cable system." *Id.* § 522(5). The term "cable service" means "the one-way transmission to subscribers of (i) video programming, or (ii) other programming service" and "subscriber interaction, if any, which is required for the selection or

---

**2.** Iowa Code § 384.81(1) requires that city utilities must be established in accordance with the city code of Iowa. Iowa Code § 362.2(6), a provision of the city code of Iowa, defines a city utility to include a "cable communication or television

system." ITA does not dispute that the City's utility is operating a cable television system pursuant to this statute and as authorized by the city ordinance establishing the utility.

use of such video programming or other programming service." *Id.* § 522(6). A "cable system" is defined as "a facility, consisting of a set of closed transmission paths and associated signal generation, reception, and control equipment that is designed to provide cable service which includes video programming and which is provided to multiple subscribers within a community. . . ." *Id.* § 522(7). ITA does not dispute that the City's utility provides video programming to subscribers over its cable system. *See generally* Iowa Code § 362.2(6) (defining a "city utility," in part, as a "cable communication or television system").

That leaves only the question of whether the City's utility is a *"person"* who provides video programming to subscribers over a cable system. *See* 47 U.S.C. § 522(5) (defining "cable operator" as a "person . . ."). The word "person" is defined in the Telecommunications Act of 1996 and that definition includes a governmental entity: "the term 'person' means an individual, partnership, association, joint stock company, trust, corporation, *or governmental entity.*" *Id.* § 522(15) (emphasis added). Thus, the City's utility, as a governmental entity, is clearly a "cable operator" protected by the limitations placed on franchising authorities by § 541(b)(3)(B). Because Congress's intent to include governmental subdivisions within the reach of § 541(b)(3)(B) is unmistakable, we are not at liberty to go beyond the statutory definitions and, in effect, modify § 541(b)(3)(B) on the basis of the federal government's traditional deference to state sovereignty. *See Pennsylvania Dep't of Corrections v. Yeskey,* 524 U.S. 206, ——, 118 S.Ct. 1952, 1954, 141 L.Ed.2d 215, 219 (1998) (holding that *Gregory's* plain-statement rule does not apply where the statute's language unmistakably includes governmental entities). We agree, therefore, with the City that once the State permits city utilities to operate cable systems, as Iowa does, then federal law prevents the State from prohibiting city utilities who operate cable systems from also offering other telecommunications services, such as telephone service. *See Schuver v. E.I. Du Pont de Nemours & Co.,* 546 N.W.2d 610, 612–13 (Iowa 1996) (holding that where a state statute conflicts with a federal statute, the state

statute is preempted and the federal statute prevails by virtue of the Supremacy Clause); *Olson v. Prosoco, Inc.,* 522 N.W.2d 284, 293 (Iowa 1994) (same).

2. *Tenth Amendment.* ITA's fall back argument is that applying § 541(b)(3)(B) to a governmental entity violates the Tenth Amendment to the United States Constitution. The Tenth Amendment states: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. As the United States Supreme Court has explained, "If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States." *New York v. United States,* 505 U.S. 144, 156, 112 S.Ct. 2408, 2417, 120 L.Ed.2d 120, 137 (1992).

In the present case, the City relies on Congress's power under the Commerce Clause, arguing that "Congress controls interstate commerce, including commerce in communications." *See* U.S. Const. art. I, § 8, cl. 3 (giving Congress power to regulate commerce among the states). ITA contends that Congress has invaded an area traditionally reserved to the states. For purposes of our discussion of this issue, it is important to note that ITA does not rest its Tenth Amendment argument on the ground that the city's utility is engaged in *intrastate* commercial activity. *See generally AT & T Corp. v. Iowa Utils. Bd.,* —— U.S. ——, ——, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999) (noting the 1996 act "clearly 'appl[ies]' to intrastate service"). Rather it relies on the municipal utility's status as a governmental entity to claim exemption from the requirements of the Telecommunications Act.

The United States Supreme Court has rejected an interpretation of the Tenth Amendment that would categorically prohibit federal regulation of "traditional" state activities. *See Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 546–47, 105 S.Ct. 1005, 1015, 83 L.Ed.2d 1016, 1031 (1985). Although the Court acknowledged in *Garcia* that the states retain " 'a significant measure

of sovereign authority' …, [t]hey do so … only to the extent that the Constitution has not divested them of their original powers and transferred those powers to the Federal Government." *Id.* at 549, 105 S.Ct. at 1016–17, 83 L.Ed.2d at 1033 (citation omitted). In other words, "the Constitution does not carve out express elements of state sovereignty that Congress may not employ its delegated powers to displace." *Id.* at 550, 105 S.Ct. at 1017, 83 L.Ed.2d at 1033. The Supreme Court concluded in *Garcia* that "[s]tate sovereign interests … are more properly protected by procedural safeguards inherent in the structure of the federal system than by judicially created limitations on federal power." *Id.* at 552, 105 S.Ct. at 1018, 83 L.Ed.2d at 1034.

With respect to the specific statute at issue in *Garcia*—the overtime and minimum-wage requirements of federal law, the Court concluded that application of these laws to a public mass-transit authority did not violate the Tenth Amendment. *Id.* at 555–56, 105 S.Ct. at 1020, 83 L.Ed.2d at 1037. The Court noted that these requirements were not "destructive of state sovereignty or violative of any constitutional provision": the transit authority "faces nothing more than the same minimum-wage and overtime obligations that hundreds of thousands of other employers, public as well as private, have to meet." *Id.* at 554, 105 S.Ct. at 1019, 83 L.Ed.2d at 1036.

In a later case, the Supreme Court summarized the appropriate analysis under the Tenth Amendment as a determination "whether an incident of state sovereignty is protected by a limitation on an Article I power." *New York*, 505 U.S. at 157, 112 S.Ct. at 2418, 120 L.Ed.2d at 138. As we previously noted, the Article I power upon which Congress relied in enacting the Telecommunications Act of 1996 is the Commerce Clause. *See* U.S. Const. art. I, § 8, cl. 3. We must determine, then, whether the State's power to regulate its political subdivisions is protected by a limitation on Congress's commerce clause power.

As we observed earlier, ITA does not claim that the challenged federal statute is not within Congress's commerce clause power. Nor does ITA point to a specific constitution-al provision, other than the Tenth Amendment, that it claims is violated by the application of § 541(b)(3)(B) to a municipal utility. Furthermore, ITA has not convinced us that the application of this statute is "destructive of state sovereignty." *See Garcia*, 469 U.S. at 554, 105 S.Ct. at 1019, 83 L.Ed.2d at 1036. As the United States Supreme Court similarly observed in *Garcia*, the federal law applies equally to private, as well as public, entities operating cable systems. *See id.* Therefore, the application of § 541(b)(3)(B) to the City's utility does not violate the Tenth Amendment. *See United States v. One Parcel of Property*, 786 F.Supp. 1497, 1505 (N.D.Iowa 1991) (finding no Tenth Amendment violation where claimants had not demonstrated that challenged federal law was not properly within Congress's commerce clause power).

## VI. *Summary.*

First, this appeal was not rendered moot by the 1997 amendments to chapter 476 because those amendments simply dealt with the jurisdiction of the utilities board and did not address whether cities have the power to engage in the regulated activity. Second, ITA was not required to proceed by quo warranto, but instead could seek declaratory relief. Third, 47 U.S.C. § 253(a) does not preempt state laws prohibiting municipalities from offering local telephone services. Last, 47 U.S.C. § 541(b)(3)(B) applies to city utilities operating cable systems and, therefore, prevents a state from prohibiting such a utility from also offering telephone service. Because of our decision on the preemption issue, we need not consider ITA's contention that state law prohibits a municipal utility from operating a telephone system. Any such law, as applied to the facts of this case, is preempted by § 541(b)(3)(B).

We hold the district court did not err in denying the City's motion to dismiss and, therefore, we affirm this ruling of the court. Although the district court erred in its interpretation of § 253(a), its grant of summary judgment to the City was, nonetheless, appropriate because § 541(b)(3)(B) does not allow the State to prohibit the City's utility from using its cable system to offer tele-

phone services. Therefore, we affirm the district court's summary judgment rulings.

**AFFIRMED ON APPEAL AND ON CROSS–APPEAL.**

LARSON, J., takes no part.