**CITY OF ABILENE, TEXAS, et al., Petitioners,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents.**

**State of Texas, et al., Intervenors.**

**Nos. 97–1633, 97–1634.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 2, 1998.

Decided Jan. 5, 1999.

James Baller, Washington, DC, argued the cause for petitioner. With him on the briefs were Sean Stokes and Lana Meller.

James M. Carr, Counsel, Federal Communications Commission, argued the cause for respondents. With him on the brief were Joel I. Klein, Assistant Attorney General, U.S. Department of Justice, Catherine G. O'Sullivan and Andrea Limmer, Attorneys, Christopher J. Wright, Washington, DC, General Counsel, Federal Communications Commission, Daniel M. Armstrong, Associate General Counsel, and John E. Ingle, Deputy Associate General Counsel, Washington, DC.

James D. Ellis, Patricia Diaz Dennis, David F. Brown, Michael K. Kellogg, Geoffrey M. Klineberg, Washington, DC, Durward D. Dupre and Michael J. Zpevak, Dallas, TX, were on the brief for intervenor Southwestern Bell Telephone Company. Robert M. Lynch entered an appearance.

Elizabeth R. Sterling, Assistant Attorney General, was on the brief for intervenor State of Texas.

Jeffrey L. Sheldon, Washington, DC and Sean A. Stokes were on the briefs for intervenor UTC, The Telecommunications Association.

Before: RANDOLPH, ROGERS, and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

The State of Texas has a law prohibiting its municipalities from providing telecommunications services. The United States has a law against state statutes that bar "any entity" from this line of business. If a Texas municipality is "any entity," the Supremacy Clause, U.S. CONST. art. VI, cl. 2, would render the Texas law a nullity, or so it is claimed. In legal parlance, the federal law would "preempt" the state law. The question here is whether the Federal Communications Commission, which administers the federal law, rightly decided that the Texas law is not preempted.

The west-central Texas city of Abilene, population 106,000, convened a task force to

study the city's technological "needs." The task force believed Abilene's businesses and residents should have "two-way audio, video and data transmission capabilities." According to the city, the local exchange company is unwilling to upgrade its system for this purpose. The city wants to fill the gap, or at least wants to consider doing so. A Texas statute stands in the way. It requires those seeking to provide local exchange telephone service, basic local telecommunications service, or switched-access service to obtain a particular type of certificate. *See* Texas Public Utility Regulatory Act of 1995 § 3.251(c) (codified at TEX. UTIL.CODE ANN. §§ 54.001, 54.201–.202 (West 1998) ("Texas Utility Act")).[1] This 1995 Texas law also renders municipalities ineligible for the certificates and forbids them from selling, "directly or indirectly," telecommunications services to the public. *Id.* § 3.251(d).

Thwarted on the State front, the city of Abilene turned to the Federal Communications Commission. The city petitioned for a declaratory ruling that a provision in the Telecommunications Act of 1996, Pub.L. No. 104–104, 110 Stat. 56, preempted the Texas law. The provision—§ 253(a)—is as follows: "No State or local statute or regulation, or

other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a).[2] The Commission denied the petition on the ground that Congress, in using the word "entity" in § 253(a), had not expressed itself with sufficient clarity to warrant federal interference with a State's regulation of its political subdivisions. *See In re Public Util. Comm'n of Texas,* 13 F.C.C.R. 3460, 3547 (1997). The city, joined by the American Public Power Association, petitioned for judicial review. Other parties intervened for and against the city's position.

In deciding this case we shall assume *arguendo* that Congress, acting within its constitutional authority, may—through the Supremacy Clause—supersede a State law limiting the powers of the State's political subdivisions. We put the matter in terms of limiting a municipality's powers because in Texas "home rule" cities like the city of Abilene, although deriving their powers from the state constitution, are subject to state legislative restrictions on those powers. *See* TEX. CONST. art. XI, § 5; *see also Lower Colorado River Auth. v. City of San Marcos,* 523 S.W.2d 641, 643–44 (Tex.1975);

1. Until 1997, these portions of the Texas Utility Act were codified at TEX.REV.CIV. STAT. ANN. art. 1446c–0 (West Supp.1996).

2. In its entirety, § 253 provides:

(a) No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.

(b) Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 of this section, requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers.

(c) Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

(d) If, after notice and opportunity for public comment, the Commission determines that a

State or local government has permitted or imposed any statute, regulation, or legal requirement that violates subsection (a) or (b) of this section, the Commission shall preempt the enforcement of such statute, regulation, or legal requirement to the extent necessary to correct such violation or inconsistency.

(e) Nothing in this section shall affect the application of section 332(c)(3) of this title to commercial mobile service providers.

(f) It shall not be a violation of this section for a State to require a telecommunications carrier that seeks to provide telephone exchange service or exchange access in a service area served by a rural telephone company to meet the requirements in section 214(e)(1) of this title for designation as an eligible telecommunications carrier for that area before being permitted to provide such service. This section shall not apply—

(1) to a service area served by a rural telephone company that has obtained an exemption, suspension, or modification of section 251(c)(4) of this title that effectively prevents a competitor from meeting the requirements of section 214(e)(1) of this title; and

(2) to a provider of commercial mobile services.

*Zachry v. City of San Antonio,* 296 S.W.2d 299, 301 (Tex.Civ.App.1956), *aff'd,* 157 Tex. 551, 305 S.W.2d 558 (Tex.1957). Whatever the scope of congressional authority in this regard, interfering with the relationship between a State and its political subdivisions strikes near the heart of State sovereignty. Local governmental units within a State have long been treated as mere "convenient agencies" for exercising State powers. *See Sailors v. Board of Educ.,* 387 U.S. 105, 107–08, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967); *see also Wisconsin Pub. Intervenor v. Mortier,* 501 U.S. 597, 607–08, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991). And the relationship between a State and its municipalities, including what limits a State places on the powers it delegates, has been described as within the State's "absolute discretion." *Sailors,* 387 U.S. at 107–08, 87 S.Ct. 1549.

■■■ For these reasons, we are in full agreement with the Federal Communications Commission that § 253(a) must be construed in compliance with the precepts laid down in *Gregory v. Ashcroft,* 501 U.S. 452, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991). To claim, as the city of Abilene does, that § 253(a) bars Texas from limiting the entry of its municipalities into the telecommunications business is to claim that Congress altered the State's governmental structure. *Gregory* held that courts should not simply infer this sort of congressional intrusion: "States retain substantial sovereign powers under our constitutional scheme, powers with which Congress does not readily interfere." 501 U.S. at 461, 111 S.Ct. 2395. Like the Commission, we therefore must be certain that Congress intended § 253(a) to govern State-local relationships regarding the provision of telecommunications services. This level of confidence may arise, *Gregory* instructs us, only when Congress has manifested its intention

with unmistakable clarity. *See* 501 U.S. at 460, 111 S.Ct. 2395. Federal law, in short, may not be interpreted to reach into areas of State sovereignty unless the language of the federal law compels the intrusion.[3]

■■■ Section 253(a) fails this test. The first thing one notices about the provision is the oddity of its formulation. It invalidates State laws that "prohibit" an entity's "ability" to do something, namely, to provide telecommunications services. This sounds strange because one would not have supposed that an entity's "ability" to furnish these services turned on a State's permission. That aside, the question remains whether the category of those whose "ability" may not be impinged by State law—"any entity"—includes municipalities. To place municipalities in that category would be to protect them from State laws restricting their governmental activities. In contending that § 253(a) has this effect, Abilene thinks it important that the provision places the modifier "any" before the word "entity." If we were dealing with the spoken word, the point might have some significance, or it might not, depending on the speaker's tone of voice. A speaker, by heavily emphasizing the "any" in "any entity," might be able to convey to his audience an intention to include every conceivable thing within the category of "entity." But we are dealing with the written word and we have no way of knowing what intonation Congress wanted readers to use. All we know is that "entity" is a term Congress left undefined in the Telecommunications Act.[4] The term may include a natural person, a corporation, a partnership, a limited liability company, a limited liability partnership, a trust, an estate, an association. *See Alarm Indus. Communications Comm. v. FCC,* 131 F.3d 1066 (D.C.Cir. 1997). Abilene maintains that it is also linguistically possible to include a municipality under the heading "entity."[5] But it is not

---

**3.** We made a similar point in *Commonwealth of Virginia v. EPA* when we wrote that a court "would have to see much clearer language to believe a statute allowed a federal agency to intrude so deeply into state political processes." 108 F.3d 1397, 1410 (D.C.Cir.1997), *partial reh'g granted,* 116 F.3d 499 (D.C.Cir.1997).

**4.** Abilene cites only sections of the Telecommunications Act defining terms other than "entity." *See* Petitioners' Brief at 31.

**5.** *But see Sailors,* 387 U.S. at 107, 87 S.Ct. 1549 (quoting *Reynolds v. Sims,* 377 U.S. 533, 575, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964)): "Political subdivisions of States—counties, cities or whatever—never were and never have been considered as sovereign entities."

enough that the statute could bear this meaning. If it were, *Gregory*'s rule of construction would never be needed. *Gregory*'s requirement of a plain statement comes into play only when the federal statute is susceptible of a construction that intrudes on State sovereignty. Other than the possibility just mentioned, Abilene offers nothing else, and certainly no textual evidence, to suggest that in using the word "entity," Congress deliberated over the effect this would have on State-local government relationships or that it meant to authorize municipalities, otherwise barred by State law, to enter the telecommunications business.

Abilene points out that § 253 contains two other subsections explicitly restricting the scope of preemption and preserving State regulatory authority over telecommunications services. *See* 47 U.S.C. § 253(b), (c). From this, it draws the conclusion that Congress meant to reserve to the States only very narrow powers. We think the opposite conclusion follows. The two subsections— § 253(b) and (c)—set aside a large regulatory territory for State authority. States may act to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, safeguard the rights of consumers, manage the public rights-of-way, and require fair and reasonable compensation from telecommunications providers for use of public rights-of-way. *See* 47 U.S.C. § 253(b), (c). In any event, the fact that Congress, in other parts of § 253, expressly reserved certain powers to the States does not make § 253(a) into the sort of clear expression *Gregory* requires for congressional interference with a State's regulation of its political subdivisions.

Abilene tells us that Congress "would surely have inserted the word 'private' between 'any' and 'entity' in Section 253(a)" if it had not wanted to limit the power of States over their local units. Petitioners' Brief at 32. The argument is mistaken. Any statute failing the *Gregory* standard, that is, any statute not clearly including matters within the core of State sovereignty, could be rewritten to exclude those matters. The question *Gregory* addresses is what to do when the text fails to indicate whether Congress focused on the effect on State sovereignty. *Gregory*'s answer is—do not construe the statute to reach so far.[6]

Abilene cites two previous Commission decisions as if these could alter the analysis *Gregory* demands.[7] *In re: IT&E Overseas, Inc.*, 7 F.C.C.R. 4023 (1992), did not concern federal preemption of traditional state powers. It involved an attempt by Guam, a U.S. territory, to exercise traditional federal powers by asserting jurisdiction over interstate and foreign common carrier communications. *See* 7 F.C.C.R. at 4023. To ensure that Guam did not usurp the Commission's exclusive authority to regulate, the Commission construed the term "any corporation" as used in another provision of the Communications Act of 1934, 47 U.S.C. § 153, to include public corporations such as Guam's publicly-owned telephone company. *See* 7 F.C.C.R. at 4025. That decision furthered Congress's clearly expressed intent in 47 U.S.C. § 151 to "centraliz[e] authority . . . with respect to interstate and foreign commerce in wire and radio communication" in one federal agency (the Commission). In contrast, Congress did not express any clear intent in § 253(a) to transfer to the Commission the states' traditional power to regulate their subdivisions. Nor is the Commission's interpretation of "entity" inconsistent with its decision in *In re Classic Telephone, Inc.*, 11 F.C.C.R. 13,082 (1996). There, the Commission overrode the refusals of two Kansas municipalities to grant telephone franchise applications to Classic Telephone, Inc. *See* 11 F.C.C.R. at

---

6. In deciding whether the Age Discrimination in Employment Act of 1967 ("ADEA") preempted a Missouri law requiring certain judges to retire at age seventy, *Gregory* made the point this way: "in this case we are not looking for a plain statement that judges are excluded [from the ADEA's coverage]. We will not read the ADEA to cover state judges unless Congress has made it clear that judges are *included*." 501 U.S. at 467, 111 S.Ct. 2395.

7. In a brief, one-paragraph appeal to "legislative history" consisting of a committee report and two post-enactment letters from Members of Congress, Abilene fails to acknowledge that the statements it quotes deal with an issue not before us—whether public utilities are entities within § 253(a)'s meaning. *See* Petitioners' Brief at 33, 15–17.

13,083. The Kansas cities were violating § 253(a) by banning entry to all but one local telephone service provider. *See* 11 F.C.C.R. at 13,095–97. The case is not at all comparable to the one before us. The Texas Utility Act restricts all municipalities from providing telecommunications services. The question here is whether § 253(a) relieves municipalities from this restriction. Section 253(a) could have this affect only if a municipality were considered an "entity." *Classic Telephone* has nothing to say on this subject.

No useful purpose would be served by setting forth Abilene's other arguments. We have considered and rejected them. The critical point is that it was not plain to the Commission, and it is not plain to us, that § 253(a) was meant to include municipalities in the category "any entity." Under *Gregory,* the petition for judicial review must therefore be denied.

*So ordered.*