**CITY OF BRISTOL, VIRGINIA, Etc, Plaintiff,**

**v.**

**Mark L. EARLEY, Attorney General, et al., Defendants.**

**No. 1:00CV00173.**

United States District Court, W.D. Virginia, Abingdon Division.

May 16, 2001.

James Baller, The Baller Herbst Law Group, P.C., Washington, DC, J.D. Bowie, Bristol, VA, for Plaintiff.

Judith Williams Jagdmann, Deputy Attorney General of Virginia, and A. Ann Berkebile, Assistant Attorney General of Virginia, Richmond, VA, for Defendants Mark L. Earley, Attorney General and Commonwealth of Virginia.

Edward J. Fuhr, Hunton & Williams, Richmond, VA, for Intervenor–Defendant Virginia Telecommunications Industry Association.

Steven R. Minor, Elliott Lawson & Pomrenke, Bristol, VA, for Amicus Curiae Congressman Rick Boucher and Amicus Curiae Blue Ridge Power Agency.

## OPINION

JONES, District Judge.

In this suit by a municipality seeking a declaratory judgment that a Virginia statute is preempted by the federal Telecommunications Act of 1996, I grant summary judgment in favor of the plaintiff and declare the Virginia statute unenforceable under the Supremacy Clause of the Constitution.

### I

The plaintiff in this case is the City of Bristol, Virginia, doing business as the Bristol Virginia Utilities Board ("City"). The City filed a complaint against Mark L. Earley, Attorney General of Virginia, and against the Commonwealth of Virginia, requesting a declaratory judgment that a Virginia statute prohibiting the City from providing fiber optic telecommunications services to the public is preempted by the federal Telecommunications Act of 1996 ("Telecommunications Act" or "Act"), 47 U.S.C.A. § 253(a) (West 1991 & Supp.

2000). By order dated February 2, 2001, the Virginia Telecommunications Industry Association was added as a party defendant in response to its motion to intervene under Federal Rule of Civil Procedure 24.

At issue is a 1999 Virginia statute providing that

> no locality shall establish any department, office, board, commission, agency or other governmental division or entity which has authority to offer telecommunications equipment, infrastructure, ... or services ... for sale or lease to any person or entity other than (i) such locality's departments, offices, boards, commissions, agencies or other governmental divisions or entities or (ii) an adjoining locality's departments, offices, boards, commissions, agencies or other governmental divisions or entities, so long as any charges for such telecommunications equipment, infrastructure and services do not exceed the cost to the providing locality of providing such equipment, infrastructure or services.

Va.Code Ann. § 15.2–1500(B) (Michie Supp.2000). The effect of this legislation is to prohibit localities in Virginia from competing in the public marketplace with commercial providers of telecommunications services and equipment.[1] The City contends that this statute thus violates the Telecommunications Act, which provides that "[n]o State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of *any entity* to provide any interstate or intrastate telecommunications service." 47 U.S.C.A. § 253(a) (emphasis added).

---

1. The Virginia statute excepts one locality, described as "any town which is located adjacent to Exit 17 on Interstate 81 and which offered telecommunications services to the public on January 1, 1998...." *Id.* This local-ity, the Town of Abingdon, is less than 10 miles from Bristol. The record does not disclose why Abingdon, out of the several hundred local governments in Virginia, was excepted.

■ Attorney General Earley and the Commonwealth filed a motion to dismiss the action, and the City moved for summary judgment. Written and oral argument has been presented, and the case is ripe for decision.[2] In summary, I hold that the words "any entity" in the federal statute plainly include a municipality. The issue is not whether allowing local government to compete with commercial providers is good public policy or not. That decision has been made by Congress, and under the Commerce Clause of the Constitution, its decision trumps any conflicting state law.

## II

### A

■ In support of their motion to dismiss, Attorney General Earley and the Commonwealth contend that the City lacks standing to bring suit under federal and state law. It is true that some courts have held that political subdivisions of a state, such as cities, lack standing to challenge a state statute on constitutional grounds. *See, e.g., Burbank–Glendale–Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1363 (9th Cir.1998). The theory behind such a rule is that a state's political subdivisions are "so thoroughly controlled by the body they are suing that the litigation amounts to a suit by the state against itself, [therefore lacking] live adversariness ...." *Rogers v. Brockette*, 588 F.2d 1057, 1065 (5th Cir.1979). However, the majority of courts have rejected this rule, particularly in Supremacy Clause challenges. *See, e.g., Branson School Dist. RE–82 v. Romer*, 161 F.3d 619, 628 (10th Cir.1998) ("[W]e conclude that a political subdivision has standing to bring a constitutional claim

against its creating state when the substance of its claim relies on the Supremacy Clause and a putatively controlling federal law."). Where a political subdivision is "legally and practically independent" from the state, the suit presents a genuine adversary contest. *Rogers*, 588 F.2d at 1065. Moreover, without deciding the issue, the Fourth Circuit has expressed doubts as to the validity of any such rule banning suits by cities against states. *See City of Charleston v. Public Serv. Comm'n of W. Va.*, 57 F.3d 385, 390 (4th Cir.1995). By virtue of Virginia's broad grant of powers to localities, discussed below, I find that the City is sufficiently independent from state government to assert a Supremacy Clause challenge against it.

■ The defendants also contend that the City lacks the authority to bring suit under state law. Virginia law grants a locality the power to sue in its own name "in relation to all matters connected with its duties." Va.Code Ann. § 15.2–1404 (Michie 1997). Section 15.2–1102 gives a broad general grant of power to localities to exercise all powers

> necessary or desirable to secure and promote the general welfare of the inhabitants of the municipality and the safety, health, peace, good order, comfort, convenience, morals, trade, commerce and industry of the municipality and the inhabitants thereof ....

Va.Code Ann. § 15.2–1102 (Michie 1997). Furthermore, the statute specifies that these enumerated powers are not exclusive, but shall be construed to be in addition to a general grant of power. *See id.* Among the general powers granted to localities is the power to establish, maintain,

**2.** Jurisdiction of this court exists pursuant to 28 U.S.C.A. § 1331 (West 1993). An action raising a challenge under the Supremacy Clause of the Constitution presents a federal question that can be resolved in federal court. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

and operate "public utilities," Va.Code Ann. § 15.2–2109 (Michie 1997), which are defined as including "the furnishing of telephone service." Va.Code Ann. § 56–265.1 (Michie 1995). Therefore, I find that providing telecommunications services falls within the ambit of the City's duties, and the suit is therefore authorized under state law.

At oral argument, the defendants asserted that the City could not contend that providing telecommunications services was part of its duties because the statute at issue clearly prohibits providing telecommunications services. I reject this argument as circular. Under this reasoning, an unconstitutional statute would be immune to a Supremacy Clause challenge by affected localities. Because the majority of courts addressing the issue have recognized that a political subdivision may bring a Supremacy Clause challenge against a state, the defendants' argument is not persuasive. *See Branson School Dist. RE–82,* 161 F.3d at 630.

■ Finally, the defendants urge that the City lacks the "injury in fact" required to establish standing because the City has not exercised its ability to lease "dark fibers" under the exception to § 15.2–1500(B). Section 15.2–1500(C) permits a locality to lease dark fibers, defined as "fiber optic cable which is not lighted by lasers or other electronic equipment." Va. Code Ann. § 15.2–1500(C). The Virginia Code further specifies that in order to take advantage of this exception, a locality may only lease to a certificated local exchange telephone company or a non-profit organization "for use in serving their not-for-profit purposes." Va.Code Ann. § 56–484.7:1 (Michie Supp.2000). Before such a lease would be effective, however, it must be approved by the State Corporation Commission. *Id.* The defendants argue that because the City has not attempted to use this option, it has suffered no injury in fact.

I find that the City has indeed suffered an injury in fact despite the fact that it has not exercised the "dark fiber" option. The Telecommunications Act prohibits any state or local laws which "may prohibit or *have the effect of prohibiting* the ability of any entity" to provide telecommunications service. 47 U.S.C.A. § 253(a) (emphasis added). Section 15.2–1500(B) specifically prohibits a locality from providing telecommunications service. The "dark fiber" exception imposes severe limitations on the ability of the City to provide telecommunications service and certainly does not permit unbridled competition in the public marketplace. Thus, the challenged statute at least has "the effect of prohibiting" the City from providing telecommunications service to the public. The City would provide telecommunications service but for § 15.2–1500(B). Therefore, it has suffered an injury in fact caused by the defendant that is substantially likely to be remedied by the requested relief, thereby satisfying the requirements for standing in federal court. *See Vt. Agency of Natural Res. v. United States,* 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000).

B

■ The next issue is whether the Commonwealth and Attorney General Earley are proper defendants under the doctrine of sovereign immunity. It is well-settled that by virtue of the Eleventh Amendment, a state cannot be sued unless it has waived immunity and consented to suit or Congress has abrogated sovereign immunity under § 5 of the Fourteenth Amendment. *See Lynn v. West,* 134 F.3d 582, 587 (4th Cir.1998). In this case, neither of these conditions has been met, and therefore the Commonwealth of Virginia is im-

mune from this suit. I will dismiss the Commonwealth as a defendant.

Under the doctrine expressed in *Ex Parte Young,* 209 U.S. 123, 157, 28 S.Ct. 441, 52 L.Ed. 714 (1908), however, a state official is not immune in certain actions for injunctive or declaratory relief. *See Alden v. Maine,* 527 U.S. 706, 757, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). However, the official is not a proper defendant unless

> it is plain that such officer ... [has] some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.

*Ex Parte Young,* 209 U.S. at 157, 28 S.Ct. 441. The Court also stated that the necessary "connection with the enforcement of the act" may arise out of general law or the specific law being challenged. *Id.* The Fourth Circuit recently held that the district court is in the best position to evaluate the questions of fact and law necessary to determine whether a state official has a sufficient connection to the enforcement of a challenged law. *See Lytle v. Griffith,* 240 F.3d 404, 410 (4th Cir.2001).

I hold that Attorney General Earley does have a sufficient connection to the enforcement of § 15.2–1500(B) to be subject to the City's action in this case. Under the Code of Virginia, the Attorney General advises the Governor in the institution of "requisite and appropriate actions[s], suit[s], motion[s] or other proceeding[s], in the name of the Commonwealth." Va.Code Ann. § 2.1–48 (Michie 1995). Furthermore, the Attorney General serves as the chief executive officer of the Virginia Department of Law. Va. Code Ann. § 2.1–117 (Michie 1995). The Fourth Circuit has held that the Virginia Attorney General is a proper defendant where a party seeks declaratory judg-

ment that a state statute is preempted by federal law. *See Mobil Oil Corp. v. Att'y Gen. of the Commonwealth of Va.,* 940 F.2d 73, 76 n. 2 (4th Cir.1991) ("[W]e think a dispute with a state suffices to create a dispute with the state's enforcement officer sued in a representative capacity.") Therefore, I find that Attorney General Earley has the requisite connection with the enforcement of § 15.2–1500(B), and will not dismiss him as a defendant.

### III

The central issue in this case is whether § 15.2–1500(B) is preempted by the Telecommunications Act. That question boils down to whether a city is an "entity" within the meaning of the Act. 47 U.S.C.A. § 253(a). If a city is not an entity, then Virginia's ban on localities providing telecommunications service does not violate the Telecommunications Act's mandate that a state cannot prohibit the ability of "any entity" to provide telecommunications service. *Id.* However, if a city is an entity, then Virginia's law is in direct conflict with the federal legislation, and cannot stand under the Supremacy Clause. U.S. Const. art. VI, cl. 2 ("[T]he Laws of the United States ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any ... Laws of any State to the Contrary notwithstanding."). In determining whether a state law is preempted by federal law, the Supreme Court has acknowledged that "[n]o simple formula can capture the complexities of this determination; the conflicts which may develop between state and federal action are as varied as the fields to which congressional action may apply." *Goldstein v. Calif.,* 412 U.S. 546, 561, 93 S.Ct. 2303, 37 L.Ed.2d 163 (1973). Absent an express preemption provision in the federal legislation, the inquiry turns to

whether Congress intended federal law to occupy the field such that state law in that area is preempted, or to whether the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363, 372, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000) (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)).

■ In this case, the challenged state law relates to an area traditionally regulated by states, i.e., the relationship between a state and its political subdivisions. *See Reynolds v. Sims,* 377 U.S. 533, 575, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) ("Political subdivisions of States ... have been traditionally regarded as subordinate governmental instrumentalities created by the State to assist in the carrying out of state governmental functions."). Where a federal statute touches on an area traditionally within the exclusive control of states, "Congress should make its intention 'clear and manifest' if it intends to pre-empt the historic powers of the States." *Gregory v. Ashcroft,* 501 U.S. 452, 461, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). The question, then, is whether § 253(a) demonstrates a "clear and manifest" intention by Congress to preempt state laws such as Virginia Code § 15.2–1500(B). *Id.* Part of this determination is whether Virginia's law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby,* 530 U.S. at 372, 120 S.Ct. 2288.

I find that the broad and unambiguous language of § 253(a) makes it clear that Congress did intend for cities to be "entities" within the meaning of the Telecommunications Act. Therefore, § 15.2–1500(B) is in direct conflict with federal law, and is void under the Supremacy Clause. Section 253(a) is a concise mandate that no state "may prohibit or have the effect of prohibiting the ability of *any entity* to provide any interstate or intrastate telecommunications service." 47 U.S.C.A. § 253(a) (emphasis added). Although the word "entity" is not defined in the Act, the plain meaning of "entity" suggests broad application. *See Alarm Indus. Communications Comm. v. FCC,* 131 F.3d 1066, 1069 (D.C.Cir.1997) (supporting proposition that "entity is the broadest of all definitions which relate to bodies or units" (internal quotations omitted)). Such an interpretation is confirmed by the use of the modifier "any." The Supreme Court has held that the use of the modifier "any" in a federal statute precludes a narrow interpretation of the law's application. *See Salinas v. United States,* 522 U.S. 52, 57, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997); *see also United States v. Gonzales,* 520 U.S. 1, 5, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997) ("Read naturally, the word 'any' has an expansive meaning ...."). Specifically, the Court has held that where Congress uses unambiguous statutory language, such as the word "any," it has expressed a "clear and manifest" intent to preempt a traditional area of state law, satisfying *Gregory,* 501 U.S. at 461, 111 S.Ct. 2395. *See Salinas,* 522 U.S. at 60, 118 S.Ct. 469. ("The plain-statement requirement articulated in *Gregory* ... does not warrant a departure from the statute's terms.").

Simply put, it strains logic to interpret the term "any entity" in § 253(a) to mean "any entity except for municipalities and other political subdivisions of states." While it is true that such an interpretation is possible, the Supreme Court has cautioned that "[a] statute can be unambiguous without addressing every interpretive theory offered by a party." *Id.* Because of the broad language chosen by Congress, I

find it to be "clear and manifest" that Congress intended § 253(a) to have sweeping application, including areas in which states traditionally enjoyed exclusive regulatory power.

■ Where the plain and ordinary meaning of a statute gives a "straightforward statutory command, there is no reason to resort to legislative history." *Gonzales,* 520 U.S. at 6, 117 S.Ct. 1032. Nevertheless, the legislative history here supports a broad, rather than narrow, interpretation.[3]

Another argument posited by the defendants focuses on the use of the word "prohibit" in the Telecommunications Act. 47 U.S.C.A. § 253(a). The argument is based on Virginia's adherence to the so-called Dillon Rule, which provides that localities "possess and can exercise only those powers expressly granted by the General Assembly, those necessarily or fairly implied therefrom, and those that are essential and indispensable." *City of Richmond v. Confrere Club of Richmond, Va., Inc.,* 239 Va. 77, 387 S.E.2d 471, 473 (1990). Because the Telecommunications Act speaks in terms of prohibition, rather than withholding authorization, the defendants argue that localities cannot fairly be considered within the purview of the Act. As discussed in Section II, A, *supra,* I find it clear that the General Assembly did authorize the City to provide telecommunications service as a public utility in sections 15.2–2109 and 56–265.1 of the Virginia Code. Furthermore, the defendants' argument is weakened by the fact that the Virginia statute also speaks in prohibatory language. *See* Va.Code Ann. § 15.2–1500(B) ("no locality shall establish . . ."). That the General Assembly sought to prohibit localities from

engaging in these particular activities implies that such activities were presumed to be a valid exercise of local government prior to the passage of the state statute. Finally, the language of § 253(a) does indicate that Congress, in its prohibition of barriers to entry into the telecommunications field, anticipated that a state might stifle competition without a direct prohibition. The federal statute, therefore, not only mandates that no state statute "may prohibit" telecommunications competition, but also that no state statute "may *have the effect of prohibiting*" telecommunications competition. 47 U.S.C.A. § 253(a) (emphasis added). Thus, even if the Virginia law were couched in terms of a "withholding of authorization" to the City under the Dillon Rule, the effect of prohibition would be the same, and the state law would violate the federal rule.

The defendants next argue this court must defer to the Federal Communications Commission's interpretation of the word "entity" under the principles of *Chevron, U.S.A., Inc. v. Nat'l Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Under *Chevron,* if a statute is silent or ambiguous as to a specific meaning, the court must defer to the interpretation given by the agency charged with administration of the statute. *Id.* at 842–43, 104 S.Ct. 2778. As discussed above, however, § 253(a) is not ambiguous. The *Chevron* Court stressed that where "the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* Therefore, not only is the FCC's interpretation not binding on this court, but it must be rejected as wrong.

---

3. The defendants have moved to strike certain of the submissions of the plaintiff concerning legislative history on the grounds that they constitute inadmissible hearsay and are irrele-

vant. Particularly since I do not rely on the legislative history of § 253(a), I will deny the defendants' motion.

The FCC first articulated its erroneous interpretation of "any entity" in *Public Utility Commission of Texas*, 13 F.C.C.R. 3460 (1997). Reasoning that the application of § 253(a) to municipalities would invade an area traditionally controlled by states, the FCC concluded that "the term [any entity] was not intended to include political subdivisions of the state." *Id.* at ¶ 184. On appeal, the District of Columbia Circuit upheld the ruling, finding that the term "any entity" was ambiguous, and that therefore the federal statute cannot preempt a traditional area of state control under *Gregory*. *See City of Abilene v. FCC*, 164 F.3d 49, 52–53 (D.C.Cir.1999). Rejecting Abilene's argument that the use of the modifier "any" requires a broad application, the court explained that the term is nonetheless ambiguous because the court could not guess Congress's "tone of voice" when dealing with the written, rather than spoken, word. Both the FCC and other courts have followed the *Abilene* decision without reexamination of the plain language of the Telecommunications Act. *See Mo. Mun. League*, 2001 WL 28068 at ¶ 9 (F.C.C. Jan.12, 2001); *Mun. Elec. Auth. of Ga. v. Ga. Pub. Serv. Comm'n*, 241 Ga.App. 237, 525 S.E.2d 399, 403 (1999); *Iowa Tel. Ass'n v. City of Hawarden*, 589 N.W.2d 245, 252 (Iowa 1999).

The interpretation of the FCC is not binding on this court, and I reject the District of Columbia Circuit's analysis of § 253(a). First, the court did not apply the principle of statutory interpretation, repeated in Supreme Court opinions, that the use of the modifier "any" in a statute precludes a narrow construction of the term it modifies. *See Salinas*, 522 U.S. at 57, 118 S.Ct. 469; *Gonzales*, 520 U.S. at 5, 117 S.Ct. 1032. The D.C. Circuit rationalized its narrow reading of the term "any" by explaining that it could not "hear" Congress's "tone of voice" with regard to the word. *City of Abilene*, 164 F.3d at 52.

Courts have always been called upon to interpret the written rather than spoken words of the legislature. That judges are unable to hear certain tonal emphases of a legislature has never been an obstacle to statutory interpretation. On the contrary, the Supreme Court has held that where Congress uses the modifier "any," it intends to impose a broad construction. *See Salinas*, 522 U.S. at 57, 118 S.Ct. 469. I find this guidance of the Supreme Court to be binding on my reading of the Telecommunications Act.

As stated in *Salinas*, *Gregory* imposes no barrier on a finding of preemption, even in an area of traditional state authority, where Congress has spoken in unambiguous language. *Id.* at 60, 118 S.Ct. 469. Further, contrary to the suggestion of the D.C. Circuit in *Abilene*, a statute may be subject to alternative interpretations and still be unambiguous. *See id.* at 60, 118 S.Ct. 469 ("A statute can be unambiguous without addressing every interpretive theory offered by a party."). The key is the plain meaning of the statutory language, *see id.*, and the Supreme Court has held that "[r]ead naturally, the word 'any' has an expansive meaning." *Gonzales*, 520 U.S. at 5, 117 S.Ct. 1032. As such, I cannot read the term "any entity" in § 253(a) to mean "any entity except for municipalities or other political subdivisions of states."

Because I find that § 253(a) applies to cities, Virginia Code § 15.2–1500(B) stands in direct conflict with the federal statute. Section 253(a) states that "[n]o State … may prohibit or have the effect of prohibiting the ability of any entity to provide any … telecommunications service." The Virginia law prohibits localities from providing telecommunications service in the public marketplace. Va.Code Ann. § 15.2–1500(B). As such, the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives

of Congress," and is preempted. *Crosby*, 530 U.S. at 372, 120 S.Ct. 2288.

 The defendants urge that application of § 253(a) to cities violates the Tenth Amendment's reservation of power to the states. U.S. Const. amend. X. This argument is not persuasive. Congress has the express authority to regulate interstate commerce. U.S. Const. art. 1, § 8. There is no question but that the telecommunications industry constitutes interstate commerce. In fact, the Supreme Court has recognized that with the passage of the Telecommunications Act, the federal government preempted areas traditionally regulated by states. *See AT & T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 378 n. 6, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999) ("[T]he question is not whether the Federal Government has taken the regulation of local telecommunications competition away from the States. With regard to the matters addressed by the 1996 Act, it unquestionably has."). In sum, I "perceive nothing in the [Act] that is destructive of state sovereignty or violative of any constitutional provision." *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 554, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985).

## IV

For the reasons stated in this opinion, I will declare that Virginia Code § 15.2–1500(B) is preempted by the Federal Telecommunications Act of 1996, 47 U.S.C.A. § 253(a), and is therefore invalid and unenforceable under the Supremacy Clause of the Constitution.[4] Accordingly, I will grant the City's motion for summary judgment and enter a declaratory judgment in its favor.

---

4. In its Complaint, the City also seeks a declaratory judgment invalidating Virginia Code § 56–484.7:1, which delineates the requirements to meet the so-called "dark fibers" exception to the prohibition in § 15.2–1500(B). *See* Va.Code Ann. § 15.2–1500(C). However, the City has indicated that the main relief it seeks is the invalidation of § 15.2–1500(B), which would remove the barrier to entry into the telecommunications market. (Replacement Version of Reply Br. of Bristol Va. Utils. Bd. in Supp. of Its Mot. for Summ. J. at 17.) Indeed, with the declaratory judgment that § 15.2–1500(B) is unenforceable, the City is no longer prohibited from entering the market as it wishes. As such, I find no reason to declare § 56–484.7:1 invalid.