# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1379

_____

The Missouri Municipal League; The    *
Missouri Association of Municipal    *
Utilities; City Utilities of Springfield;    *
City of Sikeston, Missouri; Columbia    *
Water & Light; American Public    *
Power Association,    *
   *
       Petitioners,    *
   *   Petition for Review
     v.    *   of an Order of the Federal
   *   Communications Commission.
Federal Communications Commission;    *
United States of America,    *
   *
       Respondents,    *
   *
Southwestern Bell Telephone Company; *
State of Missouri,    *
   *
       Intervenors on Appeal.    *
   *
     _____    *
   *
National Association of    *
Telecommunications Officers and    *
Advisors; United Telecom Council,    *
   *
       Amici on Behalf of    *
       Petitioners.    *

_____

Submitted: November 12, 2001

Filed: August 14, 2002
_____

Before WOLLMAN,[1] Chief Judge, BOWMAN, and STAHL,[2] Circuit Judges.
_____

WOLLMAN, Chief Judge.

Various Missouri municipalities, municipal organizations, and public power companies (the Missouri Municipals) have petitioned for review of the Federal Communications Commission's (Commission) order denying the Missouri Municipals' petition to preempt a Missouri statute that prevents municipalities and municipally owned utilities from providing telecommunications services or telecommunications facilities. We vacate the order and remand to the Commission for further consideration.

**I.**

In February 1996, Congress enacted the Telecommunications Act of 1996 (the Act), which extensively amended the Communications Act of 1934, 47 U.S.C.A. §§ 151-615 (West 2001). The Act's intended purposes are to increase competition in the area of telecommunications services and to ensure the delivery of universal

_____

[1]The Honorable Roger L. Wollman stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on January 31, 2002. He has been succeeded by the Honorable David R. Hansen.

[2]The Honorable Norman H. Stahl, United States Circuit Judge for the First Circuit, sitting by designation.

service.  To help achieve these goals, § 101(a) of the Act, codified at 47 U.S.C. § 253, provides for "removals of barriers to entry," as follows:

(a) In general
No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.

(b) State regulatory authority
Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 of this section, requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers.

. . .

(d) Preemption
If, after notice and an opportunity for public comment, the Commission determines that a State or local government has permitted or imposed any statute, regulation, or legal requirement that violates subsection (a) or (b) of this section, the Commission shall preempt the enforcement of such statute, regulation, or legal requirement to the extent necessary to correct such violation or inconsistency.  47 U.S.C.A. § 253 (West 2001 Supp.).

Section 392.410(7) of the Revised Statutes of Missouri prohibits the state's political subdivisions from obtaining the certificates of service authority necessary to provide telecommunications services or facilities directly or indirectly to the public.  It provides:

No political subdivision of this state shall provide or offer for sale, either to the public or to a telecommunications provider, a telecommunications service or telecommunications facility used to provide a telecommunications service for which a certificate of service authority is required pursuant to this section. Nothing in this subsection shall be construed to restrict a political subdivision from allowing the nondiscriminatory use of its rights-of-way including its poles, conduits, ducts and similar support structures by telecommunications providers or from providing telecommunications services or facilities;

    (1) For its own use;
    (2) For 911, E-911 or other emergency services;
    (3) For medical or educational purposes;
    (4) To students by an educational institution; or
    (5) Internet-type services. The provisions of this subsection shall expire on August 28, 2002. Mo. Rev. Stat. § 392.410(7) (West 2001 Supp.).[3]

The Missouri Municipals filed a petition with the Commission, asking that it preempt Mo. Rev. Stat. § 392.410(7) as being in violation of § 253(a) of the Act. The Commission employs a two-step process in examining statutes under § 253. First, it determines whether the statute violates § 253(a). If it does, then the Commission considers whether the statute falls within the reservation clause of § 253(b). If it does not, then the Commission must preempt the statute. Finding that the Missouri statute does not violate § 253(a), the Commission denied the petition, thus eliminating the need for § 253(b) review. In the matter of the Missouri Municipal League, 16 F.C.C.R. 1157 (2001). The Commission expressed its disagreement with the policy of the Missouri statute because it had found previously that "municipally-owned utilities . . . have the potential to become major competitors in the telecommunications industry . . . [and] can further the goal of the 1996 Act to bring

_____

[3]Missouri House Bill 1402, 2002 Mo. Legis. Serv. H.B. 1402 (Vernon's), signed into law on July 11, 2002, extended the expiration date to August 28, 2007, as well as making certain other changes in the wording of § 392.410(7), none of which affect our analysis in this case.

the benefits of competition to all Americans, particularly those who live in small rural communities." Id. at 1162; see also id. at 1173 (Separate Statement of Commissioner Susan Ness). Even though it expressed its desire that states not adopt the type of complete barriers to entry found in § 392.410(7), the Commission felt bound by legal authorities not to preempt the statute, particularly a decision of the United States Court of Appeals for the District of Columbia, City of Abilene v. FCC, 164 F.3d 49 (D.C. Cir. 1999). Missouri Municipal League, 16 F.C.C.R. at 1164-65; see also id. at 1172 (Separate Statement of Chairman William E. Kennard and Commissioner Gloria Tristani); and id. at 1173 (Separate Statement of Commissioner Susan Ness). The Missouri Municipals then filed a petition for a review of the Commission's order. Southwestern Bell Telephone Co. and the State of Missouri intervened in support of the Commission's decision.

We have jurisdiction to review final orders of the Commission under 47 U.S.C.A. § 402(a) (West 2001) and 28 U.S.C.A. § 2342(1) (West 1994).

## II.

We review agency determinations under the two-step process set forth in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). First, we must determine whether congressional intent is clear from the plain language of the statute. If congressional intent is clear, a contrary interpretation by an agency is not entitled to deference. If the language of the statute is ambiguous, however, and the legislative history reveals no clear congressional intent, we must defer to a reasonable interpretation of the statutory provision made by the agency. Ragsdale v. Wolverine Worldwide, Inc., 218 F.3d 933, 936 (8th Cir. 2000), aff'd, 122 S.Ct. 1155 (2002).

A second plain-language standard also applies in this case. The Supreme Court requires that Congress make a plain statement that it intends to preempt state law

where the preemption affects the traditional sovereignty of the states. Gregory v. Ashcroft, 501 U.S. 452, 460-61 (1991). In Gregory, the Court "confronted a statute susceptible of two plausible interpretations, one of which would have altered the existing balance of federal and state powers . . . [and] concluded that, absent a clear indication of Congress's intent to change the balance, the proper course was to adopt a construction which maintains the existing balance." Salinas v. United States, 522 U.S. 52, 59 (1997). As the Court pointed out in Salinas, however, a "statute can be unambiguous without addressing every interpretive theory offered by a party. It need only be 'plain to anyone reading the Act'" that Congress intended to alter the federal-state balance in the relevant area. Id. at 60 (quoting Gregory, 501 U.S. at 467). Thus, the Gregory plain-statement rule does not require courts to limit a statute's scope where Congress's intent is plain, and, in fact, "[a]ny other conclusion, while purporting to be an exercise in judicial restraint, would trench upon the legislative powers vested in Congress by Art. I, § 1, of the Constitution." Salinas, 522 U.S. at 60 (quoting United States v. Albertini, 472 U.S. 675, 680 (1985)).

In summary, the Gregory rule requires us to determine whether the statutory language plainly requires preemption. Gregory does not mandate that we conduct a balancing test of the federal interests against the state interests or that we delve into the wisdom of the competing federal and state policies. We do not assume that Congress exercises its Supremacy Clause power lightly, however, and we must be "certain of Congress' intent" before we find that federal law overrides the balance between state and federal powers. Gregory, 501 U.S. at 460. Even so, no matter how great the state interest, we should not strain to create ambiguity in a statute where none exists. See Salinas, 522 U.S. at 59-60. Accordingly, we ask a single question, is the statute's meaning plain? If so, that ends our analysis, with the result that it must be held that Congress has preempted state law.

The dispute hinges on the meaning of the phrase "any entity" in § 253 of the Act. More precisely, do the words "any entity" plainly include municipalities and so

satisfy the Gregory plain-statement rule? We hold that they do. Accordingly, because § 253 satisfies the Gregory plain-statement rule, it also satisfies Chevron's clear-statement rule and thus the Commission's contrary interpretation cannot stand.

We begin with the language Congress used, and, because the statute does not define the term "entity," we presume that "the ordinary meaning of that language accurately expresses the legislative purpose." Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992); see also Asgrow Seed Co. v. Winterboer, 513 U.S. 179, 187 (1995). There is no doubt that municipalities and municipally owned utilities are entities under a standard definition of the term. An entity is "[a]n organization (such as a business or a governmental unit) that has a legal identity apart from its members," and a public entity is a "governmental entity, such as a state government or one of its political subdivisions." Black's Law Dictionary 553 (7th ed. 1999). Although municipalities in Missouri derive all of their powers from the state, and although a state can control its subdivisions in an almost limitless way, see, e.g., Sailors v. Bd. of Educ., 387 U.S. 105, 107-08 (1967), municipalities and other political subdivisions have an existence separate from that of the state. It is true that as political subdivisions of the state, municipalities should not be considered independent entities. Nevertheless, the question before us is not the source from which municipalities derive their power, but whether they are included within the meaning of "any entity" as used in § 253(a). The plain meaning of the term "entity" includes all organizations, even those not entirely independent from other organizations.

Furthermore, Congress's use of "any" to modify "entity" signifies its intention to include within the statute all things that could be considered as entities. "Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" United States v. Gonzales, 520 U.S. 1, 5 (1997) (citations omitted). Time and time again the Court has held that the modifier "any" prohibits a narrowing construction of a statute. See Dep't of Hous. & Urban Dev. v.

Rucker, 122 S. Ct. 1230, 1233 (2002) (in statute requiring lease term providing for lease termination if public housing tenant or specified others engage in "any drug-related criminal activity," Congress's "use of the term 'any' to modify 'drug-related criminal activity' precludes" limiting the statute to cover only "drug-related activity that the tenant knew, or should have known, about"); Brogan v. United States, 522 U.S. 398, 400-01, 405 (1998) ("any false, fictitious or fraudulent statement" includes false statements of whatever kind); Gonzales, 520 U.S. at 5 ("any other term of imprisonment" means all prison sentences, both state and federal, where Congress did not add any language limiting the breadth of the term "any"); Freytag v. Comm'r, 501 U.S. 868, 873-74 (1991) ("any other proceeding" allows Chief Judge to assign all types of cases to a special trial judge); United States v. James, 478 U.S. 597, 605 (1986) ("any damage" and "liability of any kind" include all possible damages from a government project, not limited to just property damage); United States v. Turkette, 452 U.S. 576, 580-81 (1981) ("any enterprise" includes both legitimate and illegitimate enterprises); Harrison v. PPG Indus., Inc., 446 U.S. 578, 588-89 (1980) ("any other final action" includes all actions that constitute the agency's last word); and Bhd. of RR Trainmen v. Balt. & O. R. Co., 331 U.S. 519, 529 (1947) ("any proceeding arising under this Act" allows intervention in all cases under the statute); accord Southern Co. v. FCC, No. 99-15160, 2002 WL 1299142 at *10 (11th Cir. June 13, 2002) (plain meaning of "any" is "all" unless specifically limited in statute).

In Salinas v. United States, the Court was called upon to decide whether the federal bribery statute, which applies to "any business transaction," applies only to bribes affecting federal funds. The defendant, who had bribed a state official, argued that because the bribery statute upset the federal-state balance, the Gregory plain-statement rule required a plain statement of congressional intent that the bribery statute apply to bribes having no effect on federal funds. In holding that the bribery statute included bribes of state officials, even where no federal funds were affected, the Court stated that "the word 'any,' which prefaces the business or transaction clause, undercuts the attempt to impose this narrowing construction." Salinas, 522

U.S. at 57.  The Court also stated that "the plain-statement requirement articulated in Gregory . . . does not warrant a departure from the statute's terms." Id. at 60.

In City of Abilene v. FCC, the Court of Appeals for the District of Columbia reviewed a Commission order that refused to preempt a Texas statute similar to Mo. Rev. Stat. § 392.410(7), holding that § 253 did not contain a plain statement sufficient to preempt a traditional area of state sovereignty.  With all due deference to our sister circuit's holding, and mindful of our desire to maintain uniformity among the circuits, United States v. Auginash, 266 F.3d 781, 784 (8th Cir. 2001),  we do not find City of Abilene to be persuasive.  The D.C. Circuit noted that the mere possibility that the term "entity" could include municipalities does not satisfy Gregory.  City of Abilene, 164 F.3d at 52-53.  The court, however, made no mention of the Supreme Court's cases regarding the effect of the modifier "any" on the modified term, referring instead to Congress's "tone of voice" regarding the term "any" and the "emphasis" Congress meant to place on different words.  Id. at 52.  Counsel for the Commission stated at oral argument that the D.C. Circuit did not consider Salinas because of that court's rules regarding cases not cited in the original briefs.  Whatever the reason for the D.C. Circuit's decision not to consider and discuss Salinas and like cases, we view the lack of such a discussion as detracting from the persuasiveness of its opinion.  The Supreme Court has repeatedly instructed us regarding the proper manner of interpreting the modifier "any," and we follow that direction here.  We find no reference in any of the Supreme Court's decisions regarding the word "any" about Congress's "tone of voice" and "emphasis."  We note that a district court in Virginia, after considering both the "any" cases and City of Abilene, concluded that "any entity" should be read broadly and held that a Virginia statute similar to Mo. Rev. Stat. § 392.410(7) must be preempted.  City of Bristol v. Earley, 145 F. Supp. 2d 741, 747-49 (W.D. Va. 2001) ("it strains logic to interpret the term 'any entity' in § 253(a) to mean 'any entity except for municipalities and other political subdivisions of states'").

Accordingly, we conclude that because municipalities fall within the ordinary definition of the term "entity," and because Congress gave that term expansive scope by using the modifier "any," individual municipalities are encompassed within the term "any entity" as used in § 253(a). This language would plainly include municipalities in any other context, and we should not hold otherwise here merely because § 253 affects a state's authority to regulate its municipalities. Congress need not provide specific definitions for each term in a statute where those terms have a plain, ordinary meaning and Congress uses an expansive modifier to demonstrate the breadth of the statute's application. See Gregory, 501 U.S. at 467 (statute need not explicitly mention judges to have judges included in the definition); Salinas, 522 U.S. at 60 (statute need not address every interpretive theory offered in order to be unambiguous).

We recognize Missouri's important interest in regulating its political subdivisions. The Gregory standard is designed to respect such interests. That Salinas was a criminal case in which the state had no interest in allowing its officials to take bribes does not detract from its fundamental holding regarding the authority of Congress to change the balance of state and federal powers when it employs plain language to do so. Salinas held that by using the clearly expansive term "any," Congress expressed its intent to alter this relationship. We conclude that the same must be said about the preemption provision set forth in § 253.

Missouri also argues that because the state controls its municipalities' authority, § 253 does not apply to this case. Section 253 directs the Commission to preempt laws that prohibit "the ability of any entity" to provide telecommunications services. Missouri argues that because § 392.410(7) addresses its municipalities' authority to provide telecommunications services rather than their ability to do so, § 253 does not apply. Missouri contends that if § 392.410(7) is held to be preempted, it would not be able to prevent its attorney general's office from providing telecommunications services. Putting aside the highly fanciful nature of this

argument, it needs only to be noted that unlike municipalities, the Missouri Attorney General's office has no independent authority to provide telecommunications services. Section 392.410(7) is a prohibition on the ability to exercise the authority that municipalities otherwise possess, precisely the type of prohibition that § 253 is designed to prevent. See City of Bristol, 145 F. Supp. 2d at 748 (Virginia municipalities otherwise have authority to provide telecommunications services and state statute designed to prohibit them from exercising that authority preempted by § 253).

The Commission's order is vacated, and the case is remanded to the Commission for further proceedings consistent with the views set forth in this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-